Juan Xavier HUREL GUERRERO,
Petitioner,

v.

UNITED STATES of America,
Respondent.

Civil Action No. CV–96–3755(DGT).

United States District Court,
E.D. New York.

March 16, 1998.

**212**

Mitchell A. Golub, New York City, for Petitioner.

Hon. Zachary W. Carter, U.S. Atty., Eastern District of New York, Brooklyn, NY, for Respondent.

### CORRECTED MEMORANDUM AND ORDER

TRAGER, District Judge.

Petitioner, pro se, brought this 28 U.S.C. § 2255 action contending only that he was entitled to application of the "safety valve" provisions set forth at § 5C1.2 and § 2D1.1(b)(4) of the Sentencing Guidelines, and, as a result, petitioner claimed he is entitled to a downward adjustment of two levels in his offense level. Subsequently, for reasons explained in the opinion, I appointed counsel who then raised a second point, namely that petitioner was denied effective assistance of counsel at his *Fatico* hearing.

### Background

(1)

Petitioner's conviction arose from his participation in a multi-defendant conspiracy to transport cocaine in suitcases on board commercial airline flights from Puerto Rico to New York and Philadelphia between May 1993 and September 1993. Through his employment as a baggage ramp coordinator at Luis Munoz International Airport in San Juan, Puerto Rico, petitioner was a key facilitator of the drug conspiracy. To assist the conspiracy, petitioner provided agricultural inspection stickers or "tickets" that enabled cocaine-laden suitcases to avoid x-ray examination. There was evidence presented at a *Fatico* hearing that petitioner's assistance to the drug conspiracy also included moving the suitcases to a safe location when routine drug inspections were to occur and ensuring that the suitcases were the last to be placed in the airplanes' baggage compartment so that they would be the first unloaded when the airplane reached its destination, thereby reducing the amount of time the couriers would remain at risk of detection in the airport.

Petitioner was first charged in a one-count indictment with conspiracy to possess cocaine with the intent to distribute in violation of Title 21 U.S.C. § 841(a)(1). Superseding indictments were filed against petitioner on August 3, 1994, and August 24, 1994, additionally charging him with two specific substantive counts of possession of cocaine with intent to distribute. Each count carried a statutory mandatory minimum sentence of ten years.

Throughout the case, petitioner maintained that he intended to go to trial. Only after a trial date was set, the government had prepared for trial, and a jury was empaneled did petitioner agree to a plea bargain with the government. *See* Transcript of Plea Minutes, September 9, 1994 (hereafter "Tr 9/9/94"); Docket Sheet 93 cr 1147, Item No. 39. Petitioner pled guilty to a lesser included offense of Count One of the Second Superseding Indictment, charging him with conspiracy to possess cocaine with the intent to distribute. Tr 9/9/94, p. 67. The effect was to reduce the mandatory minimum sentence to five years. Tr 9/9/94, pp. 3, 17.

The plea agreement, predicated on petitioner's involvement with 50–150 kilograms of cocaine, estimated petitioner's sentencing range at 151–188 months, which included a two-point reduction for acceptance of responsibility authorized by the Sentencing Guidelines. Tr 9/9/94, pp. 21, 45–46. The Probation Department Sentencing Report ("PSR") la-

ter found petitioner accountable for 196 kilograms of cocaine and recommended a guidelines sentence of between 188 and 235 months. Though he had admitted his guilt, Guerrero maintained at all times, before and after entering into the plea agreement, that he should receive a sentence of 97–121 months or less based upon: (i) a three point adjustment for minor role, (ii) an additional one point downward departure for a full three point deduction for acceptance of responsibility, and (iii) a two point deduction for a quantity of less than 50 kilograms of cocaine. *See* Tr 9/9/94, pp. 3, 6–7, 9, 19–20, 29–30, 46–47. Had petitioner been able to prevail on all of these grounds, his guidelines level would have been 28, and his sentencing range from 78 to 97 months. From the plea minutes, it appears that his counsel's strategy was to have his client plead guilty, and then challenge the government's evidence at a *Fatico* hearing with the hopes of having petitioner's sentencing level reduced below that of the estimated guidelines set forth in the plea agreement.[1]

While petitioner was within his rights to adopt this strategy, he was explicitly informed that there were no guarantees that a *Fatico* hearing would result in a lower sentencing range than that which petitioner had agreed to in the plea agreement. Tr 9/9/94, pp. 29–31, 44–47, 53. Indeed, it was made clear to petitioner on more than one occasion that the *Fatico* hearing could result in his receiving a sentence of more than eight years. Tr 9/9/94, pp. 30–31, 44–48, 52–53, 57–59. The only concession that Guerrero was given was a promise that he could have his plea back if it was determined that the sentence should be more than 188 months. Tr 9/9/94, pp. 55, 57–59. Intent upon challenging the government's evidence, however, petitioner proceeded to a *Fatico* hearing.

### (2)

The *Fatico* hearing was held on February 10, 1995. At the hearing, evidence was presented showing that petitioner played a far more critical role in the conspiracy than his plea indicated. Tr 9/9/94, pp. 62–63, 64–67; Plea Agreement (hereafter "PA"), p. 2; Fatico Hearing Transcript (hereafter "Tr 2/10/95"), pp. 8–29, 42–62, 108. The credible testimony of petitioner's co-conspirators established that prior to petitioner's involvement, the conspiracy had experienced difficulties concealing drug-filled suitcases from customs agents. Tr 2/10/95, pp. 16–20. Petitioner's strategic position as a baggage handler greatly facilitated the transport of substantial quantities of cocaine into New York. Tr 2/10/95, pp. 20–24, 47. In sum, the testimony presented at the *Fatico* hearing established that petitioner's actions directly contributed to the shipment of between 50 and 150 kilograms of cocaine within the United States. Tr 2/10/95, pp. 68–69, 71, 83.

In light of this evidence that petitioner's assistance was integral to the conspiracy's success, a downward departure for minimal role was rejected. *See* Tr 2/10/95, pp. 71–73, 104–105, 107–110, 116. Accordingly, the Sentencing Guidelines resulted in a base offense level of 36. After a two point downward adjustment for acceptance of responsibility, petitioner was sentenced to 151 months, imprisonment—the minimum allowable at an offense level of 34 and also the estimated minimum in the plea agreement. Tr 2/10/95, pp. 114–115; PA, p. 2.

### (3)

On July 26, 1996, petitioner moved pro se for a reduction in sentence under 28 U.S.C. § 2255. While I believed that the issue raised in his petition was meritless, it recalled concerns that I had harbored about counsel's competence at the *Fatico* hearing. I therefore decided to appoint counsel, pursuant to the Criminal Justice Act, to assist petitioner in pursuing this motion, mentioning specifically this issue to court appointed counsel. Counsel submitted a letter in furtherance of petitioner's application, raising the issue of ineffective assistance of counsel

---

1. Petitioner's counsel stated that he had explained to petitioner that "the U.S. Attorney's office is stating that he has a 34 guideline level, that we are entitled to a *Fatico* hearing, and that if we can prove and demonstrate to this court that his level is lower than that, that the judge will sentence him accordingly to the guideline level that we're able to prove. If it's 34—30, it would be 97 months." Tr 9/9/94, p. 29.

at the *Fatico* hearing, and the government submitted a letter in opposition.

Subsequently, the government sent a second letter on July 15, 1997 stating that it had learned that petitioner's *Fatico* hearing attorney, Francisco Serrano–Walker, was not admitted to practice in the Eastern District of New York at the time he represented petitioner. This new information only increased my concern about the quality of representation that petitioner had received, for the same inattention to professional obligations had occurred here. Scheduled status conferences often had to be rescheduled because of counsel's unavailability.

## Discussion

28 U.S.C. § 2255 provides that a prisoner in federal custody may move the same court which sentenced him or her for an order correcting the sentence on the ground that the sentence was imposed in violation of the United States Constitution or United States law. If the motion papers, files, and records conclusively show that the prisoner is not entitled to relief, the motion may he denied without a hearing. *See* 28 U.S.C. § 2255.

### 1. *Ineffective Assistance of Counsel*

On this § 2255 motion, the initial contention is that petitioner was deprived of effective assistance of counsel at his *Fatico* hearing. Petitioner may prevail on this ground if his counsel's assistance was per se ineffective, meaning that petitioner's right to representation by counsel under the Sixth Amendment has been violated, *see Solina v. United States,* 709 F.2d 160, 168–169 (2d Cir.1983), or if he proves both that (1) his legal representation fell short of the constitutionally required "objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984).

#### (1)

On July 15, 1997, the government wrote that it had learned, subsequent to receiving Guerrero's petition, that his *Fatico* hearing counsel, Francisco Serrano–Walker, Esq. ("Serrano"), was not admitted to practice law in the Eastern District of New York at the time of his hearing. Indeed, Serrano had been struck from the roll of attorneys admitted to practice in this district by the late Judge John R. Bartels in 1992 for failure to make court appearances and had never been formally re-admitted. *See* Letter of Serrano–Walker to Chief Judge Sifton, dated April 3, 1997 (seeking reinstatement to practice in district).

■ The government's letter raised a potential per se violation of the right to effective assistance of counsel. A per se violation of a defendant's Sixth Amendment right to effective assistance of counsel exists where unbeknownst to the defendant, defendant's counsel, for failure to meet substantive bar requirements, is not a member of the bar of any jurisdiction, *Solina v. United States,* 709 F.2d 160 (2d Cir.1983), where counsel obtains admission to the bar through perpetration of a fraud, *United States v. Novak,* 903 F.2d 883 (2d Cir.1990), or where the putative attorney impermissibly bypasses the processes which permit the state to ascertain his or her competence. *People v. Felder,* 47 N.Y.2d 287, 293, 418 N.Y.S.2d 295, 297, 391 N.E.2d 1274, 1275 (1979). In each of these instances, the defendant is deprived of his or her constitutionally guaranteed right to counsel. *See Solina,* 709 F.2d at 168–69; *Bellamy v. Cogdell,* 974 F.2d 302, 306 (2d Cir.1992).

■ However, as the Second Circuit discussed in *Kieser v. State of New York,* 56 F.3d 16, 17 (2d Cir.1995), "not every technical defect in the licensed status of a petitioner's representative amounts to a violation of the Sixth Amendment." Where the petitioner's duly licensed attorney has been suspended for technical reasons such as nonpayment of bar dues, "the courts have ruled these grounds insufficient to warrant a conclusion of per se violation of the right to counsel." *Id.; see e.g., Ferrara v. Keane,* 806 F.Supp. 472 (S.D.N.Y.1992) (failure of licensed attorney to move for admission *pro hac vice* is a technical defect and does not represent a per se violation of the right to counsel).

In *Kieser*, the court denied relief on a habeas corpus petition claiming ineffective assistance of counsel where petitioner's lawyer was suspended from the New Jersey bar for non-payment of bar dues during the early phases of representation. The lawyer was subsequently reinstated to the New Jersey bar prior to the petitioner's criminal trial, but in any event, was never admitted *pro hac vice* to practice in a New York court. The court held that counsel's licensing defect did not violate the petitioner's Sixth Amendment right to effective assistance of counsel.

Here, while Serrano's having been struck from the roll of attorneys licensed to practice in this district for failure to make court appearances is more than merely technical, it is not the same as someone who has been disbarred or who has never been licensed to practice law at all. Serrano was duly admitted and has been continuously eligible to practice law in the First Department of New York since December, 1984. Serrano was also admitted to the Puerto Rico Bar in 1981, and it appears that he was practicing there at the time of this case.

Since Serrano was duly licensed to practice law in the State of New York at the time of petitioner's *Fatico* hearing, and as there is no evidence that Serrano's license was obtained through fraud or deception, a claim that petitioner was denied representation by counsel should not be viewed as sufficient to constitute a per se violation of petitioner's Sixth Amendment right to effective assistance of counsel. However, that still leaves open the question whether his removal from the roll of admitted attorneys played any role in his handling of this case. That issue will be discussed separately.

(2)

On Guerrero's behalf, appointed counsel contends that petitioner's Sixth Amendment rights were violated because Serrano's performance at his *Fatico* hearing was sufficiently inadequate to constitute ineffective assistance of counsel. Indeed, this claim raises serious concerns about the adequacy of Serrano's representation of petitioner. First, though petitioner had waived his right to a trial by jury and pled guilty, Serrano nevertheless continued to contest petitioner's guilt, causing me to remind Serrano on many occasions that he should not attempt to retry his client's guilt. *See* Tr 2/10/95, pp. 61, 63, 104, 105. Second, Serrano's statements at the hearing were often confusing and at times unintelligible.[2] Serrano's unfocused rambling caused him to be admonished on numerous occasions and to be urged to "focus on the issues." *See* Tr 2/10/95, pp. 6, 61–64, 69–73, 91–92, 106.

In spite of being warned many times, Serrano failed to do as I requested. Serrano's attempts to challenge the government's case at the *Fatico* hearing consisted of repeating variations of a seriously flawed argument, well beyond the point at which it became apparent that the argument had no merit.

2. In a colloquy concerning the amount of money which defendant was paid per kilogram of cocaine successfully transported under his watch, Serrano said:

MR. SERRANO–WALKER: He paid $1,000 to [petitioner]. But the persons paying [petitioner] is Mr. Arias and Mr. Osorio Rojas, They take off their money off the top and [petitioner] gets a thousand five for him not $1500.

THE COURT: He didn't say that. He said they got $1500 out of which they paid your client a thousand a kilo.

MR. SERRANO–WALKER: That is what he said.

THE COURT: Where is the contradiction?

MR. SERRANO–WALKER: Rojas tells the agent he gets thousand. He tells the agent—[petitioner]—he was making $1,500 per kilo. He had to pay other people out of that one thousand five hundred.

THE COURT: I don't want to embarrass you. Do you understand English?
Tr 2/10/95, pp. 66–67. *See also*, Letter of Serrano–Walker to Chief Judge Sifton, dated April 3, 1997. In that letter, Serrano states:
I am writing to clarify my status as a practicing attorney of the Eastern District of New York. I spoke to Mr. James Goikas Deputy chief [sic] in charge of the Clerk [sic] office in the Eastern District, he advice [sic] me to write this letter so that I either find out if the proceedings were adequate or be reinstated to the roll of attorney [sic]. In 1992 1 was in from [sic] of the late Judge John R. Bartels, and he decided to have my name stricken from the roll of attorneys for the Eastern District of New York, but I was never notify [sic] beside [sic] the hearing held in court. Until today I

Serrano's argument was based upon: (i) an entry in a DEA report stating that petitioner had been paid $30,000 following the successful completion of a smuggling trip or trips, and (ii) an entry in a separate part of the same report containing a co-conspirator's statement which stated that petitioner was paid $1500 per kilogram of cocaine smuggled successfully. Serrano contended that these two statements together proved that petitioner's knowing involvement in the conspiracy was limited to 20 kilograms of cocaine.[3] Tr 2/10/95, pp. 63–69. Seemingly oblivious to the testimony of petitioner's co-conspirators, which I found to be credible, that petitioner knowingly transported or attempted to transport with the intent to distribute 145 kilograms of cocaine, Serrano persisted in this line of argumentation. Tr 2/10/95, pp. 5, 64–67, 69, 71, 82, 84, 93, 105–107.

Moreover, Serrano ignored testimony which established that petitioner had been paid at least $80,000 for his involvement in the conspiracy; that the owners of the drugs had paid the conspirators $120,000; that the $120,000 paid to the conspirators was for less than the total amount of drugs successfully shipped; and that the figure of $1500 in the DEA report was mistaken—petitioner was paid $1000 per kilo. Tr 2/10/95, pp. 54–55, 60, 63, 67, 71. Even assuming that the $1500 figure had been correct, petitioner would have been paid for over 50 kilograms of cocaine. Tr 2/10/95, pp. 83–84. In sum, the record is replete with instances of Serrano's inadequate performance.

Notwithstanding Serrano's inept defense at the *Fatico* hearing, Guerrero was sentenced to the lowest recommended term in the plea agreement (151 months); the PSR which had suggested a sentence of between 188 and 235 months was not followed. Consistent with the plea agreement, petitioner was found accountable for transporting between 50 and 150 kilograms of cocaine and allowed a two point downward adjustment

for acceptance of responsibility. PA, p. 2; *see* Tr 2/10/95, pp. 69–71, 83–84, 111–112, 116.

In light of the eventual sentence, and after reviewing the record, it would appear that petitioner has not made out a viable case for ineffective assistance of counsel. First, any claim petitioner might have had for ineffective assistance of counsel at the *Fatico* hearing fails because even the most competent of counsel could not have altered the facts that were disclosed at the hearing and the sentence that was ultimately imposed was the lowest that petitioner had bargained for under the plea agreement.[4] Thus, no matter how inadequate petitioner's representation was at the *Fatico* hearing, petitioner suffered no real prejudice. That, under *Strickland,* should be the end of the inquiry.

■ Unfortunately, that is not the end of the matter. Even though there was no prejudice to petitioner from the *Fatico* hearing, the problem here is that counsel's whole approach to petitioner's defense was misguided from day one. The prejudice to petitioner, if any, resulted from a foolish strategy from the outset—seeking a *Fatico* hearing in the first instance, the net result of which was to establish petitioner's extensive and important involvement in the conspiracy. Once a *Fatico* hearing was demanded, the door was opened to the admission of this evidence. A far wiser course would have been an earlier plea and possible government acquiescence in a two level minor role reduction or a lower drug quantity estimate. In light of general plea practices in this district at the time, such a two-level reduction on one of these grounds would not have been farfetched. This additional two-level reduction, together with an additional point for early acceptance of plea, would have produced a level 31 and a range of 108–135 months, or nine years. Serrano's ineptness at the *Fatico* hearing thus reflects back on his earlier representation, for all three sentencing guideline reductions that he was urging are of the kind that

though [sic] that the late Judge Bartels had not ordered my name stricken from the rolls.

3. I found the testimony of defendant's co-conspirators, establishing the extent of defendant's knowing involvement in the conspiracy, to be credible. Guerrero knowingly transported or at-

tempted to transport with the intent to distribute 145 kilograms of cocaine, and certainly well above 50. *See, e.g.,* Tr 2/10/95, pp. 69, 71.

4. Based solely upon defendant's offense level, Guerrero could have been sentenced to a term of 188 months in prison.

are best negotiated for before a plea and not at a *Fatico* hearing. *Cf., Boria v. Keane,* 99 F.3d 492 (2d Cir.1996). Moreover, a concern must also arise that Serrano's failure to engage in prompt negotiations may have been prompted by the fact that he was not authorized to practice in the district.

Nevertheless, after a careful review of the record, I am convinced that whatever the inadequacies of Serrano's representation at the *Fatico* hearing or before, the adverse result here for petitioner was due to his decisions and not Serrano's actions. While the decision not to plead earlier and to request a *Fatico* hearing might be considered attributable to less than adequate representation, the sentence that petitioner received was in the final analysis the result of petitioner's choices. Although the record does not explicitly address this question completely, Guerrero's decision not to negotiate earlier was motivated by a different set of considerations than any ineffectiveness by Serrano. What comes through from a review of the record is that Guerrero's decision to delay his guilty plea was ultimately motivated by a hope, if not an expectation, that his "friends," who were also the principals of the conspiracy, would not testify against him. *See* Tr 2/10/95, pp. 97–100. This wish that his co-conspirators would renege on their cooperation agreements was foolish. But it was this consideration as well as petitioner's stubborn refusal to face the prospect of a severe sentence, especially when he contemplated the relatively low sentences that the more culpable members of the conspiracy would likely receive for their cooperation, that were ultimately responsible for the delay in negotiating a plea on possibly far more favorable terms. *See* Tr 9/9/94, p. 14; Tr 2/10/95, p. 92. But Guerrero's unwillingness to accept his relatively high sentence was his choice, and the responsibility for following what to others would be an irrational course of conduct cannot fairly be laid upon Serrano. The record thus indicates that Serrano's failure to negotiate earlier was not the result of Serrano's incompetence or a possible concern on Serrano's part that the Assistant U.S. Attorney might become aware of Serrano's disbarred status. *See* Letter of Serrano–Walker to Chief Judge Sifton, dated April 3, 1997 (wherein Serrano states that he was unaware that he had been formally stricken from the roll of attorneys admitted to practice in this district).

Accordingly, the motion by petitioner to set aside his sentence on the grounds of ineffective assistance of counsel is denied.

### 2. *"Safety Valve" Provision*

■ Petitioner's claim that he is entitled to application of the "safety valve" provision of 18 U.S.C. § 3553(f)(1)–(5) fails as a matter of law. The "safety valve" provision authorizing a two level decrease in offense level, U.S.S.G. § 2D1.1(b)(4), became effective on November 1, 1995, after petitioner's sentencing, and does not apply retroactively.

U.S.S.G. § 5C1.2, also known as the "safety valve," allows defendants in narcotics cases to escape the statutory minimum sentences provided certain criteria relating to the defendant's prior criminal record and the nature and seriousness of the offense are satisfied. *See* 18 U.S.C. § 3553(f)(1)–(5). U.S.S.G. § 2D1.1 was amended to provide a two level decrease in offense level for defendants who meet the criteria set forth in § 5C1.2 and whose offense level is 26 or greater. *See* U.S.S.G. § 2D1.1(b)(4).

Unless an amendment to the Sentencing Guidelines is selected for retroactive application under U.S.S.G. § 1B1.10(c), however, the sentencing court is not authorized to apply it retroactively. *See* 18 U.S.C. § 3582(c); U.S.S.G. § 1B1.10(a); *Soto v. United States,* 1996 WL 497144 (E.D.N.Y.). U.S.S.G. § 2D1.1(b)(4) was added to the Sentencing Guidelines under amendment number 515, Amendment 515 was not selected for retroactive application. *See* U.S.S.G. § 1B1.10(c); U.S.S.G. Appendix C, Amendment 515; *United States v. Muhammed,* 1996 WL 15681 (S.D.N.Y.). Thus, as petitioner was sentenced in February, some eight and one half months prior to the effective date of amendment number 515, and as § 2D1.1(b)(4) does not apply retroactively, petitioner is not entitled to any reduction in his sentence as a result of the "safety valve" amendment.

## Conclusion

Taken together, petitioner's motion papers, the file, and the records in this case show that the petitioner is not entitled to any relief. Accordingly, a hearing in this matter is not necessary and petitioner's § 2255 petition is denied. A certificate of appealability will not issue since petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. The Clerk of the Court is directed to close the case.