**Juan Xavier HUREL GUERRERO, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

No. 98–2286.

United States Court of Appeals, Second Circuit.

Argued May 7, 1999.

Decided Aug. 4, 1999.

· Mitchell A. Golub, New York, N.Y. (Susan L. Peters, Golub & Golub, LLP, of counsel), for Petitioner–Appellant.

Michelle R.M. Campbell, Assistant United States Attorney, Brooklyn, N.Y. (Zachary W. Carter, United States Attorney, David C. James, Assistant United States Attorney, of counsel), for Respondent–Appellee.

Before OAKES, CABRANES and SACK, Circuit Judges.

*Introduction*

OAKES, Senior Circuit Judge:

Appellant Juan Xavier Hurel Guerrero ("Hurel–Guerrero") was convicted in the United States District Court for the Eastern District of New York (David G. Trager, *Judge* ), upon a guilty plea, of conspiracy to possess cocaine with the intent to distribute under 21 U.S.C. § 841(a)(1). On February 10, 1995, after a *Fatico* hearing, *see United States v. Fatico,* 579 F.2d 707 (2d Cir.1978), he was sentenced in accordance with the United States Sentencing Commission Guidelines Manual ("the Guidelines") to a term of imprisonment of 151 months (which was the minimum for his offense level of 34), a supervised release term of five years, and a $50 special assessment. His conviction and sentence were affirmed on appeal. *See United States v. Marcel,* 99 F.3d 400, 1995 WL 732747 (2d Cir.1995) (Table).

Hurel–Guerrero subsequently filed a petition pursuant to 28 U.S.C. § 2255, contending that his counsel during the criminal proceedings, Francisco Serrano–Walker ("Serrano"), was *per se* ineffective in violation of the Sixth Amendment. Notwithstanding the fact that Serrano was admitted to the bars of New York State and Puerto Rico, Hurel–Guerrero maintained Serrano was *per se* ineffective because he had been suspended from practice in the Eastern District of New York for failing to appear for sentencing on two separate occasions in an unrelated case. Hurel–Guerrero also contended that, even if his Sixth Amendment right to effective assistance of counsel was not violated *per se* due to Serrano's prior disqualification in the Eastern District of New York, that right had been violated through specific instances of ineffectiveness in Serrano's representation of Hurel–Guerrero.

The district court denied Hurel–Guerrero's petition on all grounds, but the court granted a certificate of appealability on the issue of whether the fact that Hurel–Guerrero's attorney was not admitted to practice in the Eastern District of New York constituted *per se* ineffective assistance of counsel.

The appeal now comes before this court pursuant to that certificate of appealability. For the reasons set forth below, Hurel–Guerrero's claim that Serrano's lack of admission in the Eastern District of New York constituted *per se* ineffective assistance of counsel is rejected.

With respect to Hurel–Guerrero's contention that Serrano provided ineffective assistance of counsel in connection with the *Fatico* hearing, and Hurel–Guerrero's implicit request for a certificate of appealability on this issue, we find that there was no constitutional violation.

*Background*

The facts discussed below are taken from the district court's opinion. *See Hurel Guerrero v. United States,* 998 F.Supp. 211, 212–14 (E.D.N.Y.1998).[1] Hurel–Guerrero pled guilty to participating in a conspiracy to transport cocaine in suitcases on board commercial airline flights. Through his job as a baggage ramp coordinator at the Luis Munoz International Airport in San Juan, Puerto Rico, Hurel–Guerrero was able to facilitate the transportation of the cocaine-laden suitcases. He did so by providing agricultural inspection stickers or "tickets" which allowed the ticketed suitcases to avoid x-ray examination. Hurel–Guerrero's assistance in the conspiracy also included moving the suitcases to a safe location when routine drug inspections were to occur, and ensuring that the suitcases were the last to be loaded onto the airplane so that they would be the first unloaded, thus reducing the amount of time the drug couriers would have to remain in the airport.

Hurel–Guerrero was charged with conspiracy to possess cocaine with the intent

---

1. We rely on the factual determinations of the district court that are not clearly erroneous.

*See United States v. Bryson,* 163 F.3d 742, 747 (2d Cir.1998).

to distribute it in violation of Title 21 U.S.C. § 841(a)(1) and two specific counts of possession with the intent to distribute. The statutory mandatory minimum sentence on each count was ten years. Hurel–Guerrero maintained from the outset of the case that he intended to go to trial. However, after a trial date was set and a jury was empaneled, he consented to a plea agreement.

Hurel–Guerrero pled guilty to a lesser included offense of Count One of the Second Superseding Indictment filed against him, which charged him with conspiracy to possess cocaine with the intent to distribute. The mandatory minimum sentence for the lesser included offense was five years. In the plea agreement, the government estimated a Guidelines adjusted offense level of 34, which reflected Hurel–Guerrero's accountability for 50–150 kilograms of cocaine, and a two-point reduction for acceptance of responsibility. (For a defendant with no prior convictions, this adjusted offense level corresponds to a sentencing range of 151–188 months.) Although he pled guilty to the offense of conspiracy to possess with the intent to distribute, Hurel–Guerrero apparently hoped to convince the district court to adopt a lower adjusted offense level, based on a lesser amount of cocaine and a downward adjustment for minor role. Prior to sentencing, however, the Probation Department found Hurel–Guerrero accountable for 196 kilograms of cocaine, and recommended a Guidelines range of 188–235 months.

Hurel–Guerrero and Serrano requested a *Fatico* hearing prior to sentencing.[2] At the hearing, the government witnesses (Hurel–Guerrero's co-conspirators) substantiated the government's argument that

Hurel–Guerrero had been paid enough money to indicate that he facilitated the transportation of much more than 50 kilograms of cocaine. The testimony also revealed that Hurel–Guerrero had played a far more critical role in the conspiracy than his plea indicated. Hurel–Guerrero was not called at the hearing to testify, nor did Serrano present a compelling argument to counter the government's witnesses or to otherwise indicate that the amount of cocaine involved was less than 50 kilograms. Accordingly, the district court adopted the plea agreement estimate and applied a Guidelines adjusted offense level of 34, which included a two-point reduction for acceptance of responsibility. As noted above, the court sentenced Hurel–Guerrero to 151 months, which fell at the bottom of the applicable sentencing range.

### Discussion

Hurel–Guerrero argues that (1) it was reversible error for the district court not to find that his representation by an attorney barred from practice in the Eastern District was *per se* ineffective assistance of counsel; (2) his notice of appeal should be deemed by this court as a request for a certificate of appealability on the issue of ineffective assistance of counsel under the *Strickland* test; and (3) his counsel's representation in connection with the *Fatico* hearing below constituted ineffective assistance of counsel under *Strickland*. We disagree with his first and third arguments, we agree with his second argument, but we affirm the district court.

#### Procedural Posture

The district court did not grant a certificate of appealability as to the question of whether Serrano's performance was inef-

---

2. When explaining the decision to request a *Fatico* hearing, and the appellant's role in the decision,

> [Serrano] stated that he had explained to petitioner that "the U.S. Attorney's office is stating that he has a 34 guideline level, that we are entitled to a *Fatico* hearing, and that if we can prove and demonstrate to this

court that his level is lower than that, that the judge will sentence him accordingly to the guideline level that we're able to prove. If it's 34–30 [apparently referring to a base offense level of 34 and an adjusted offense level of 30], it [the low end of the applicable Guidelines range] would be 97 months."

*Hurel Guerrero*, 998 F.Supp. at 213 n. 1.

fective under the test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). With the government's agreement, we will treat Hurel-Guerrero's notice of appeal as presenting a timely request for a certificate of appealability from the court under 28 U.S.C. § 2253(c).[3] *See Hooper v. United States,* 112 F.3d 83, 88 (2d Cir.1997) (treating notice of appeal as a request for a certificate of appealability); *Williams v. Parke,* 133 F.3d 971, 975 (7th Cir.1997) (treating appeal of constitutional claims as "an implicit request for a certificate of appealability from this court").

■ With respect to a certificate of appealability, we do not address the merits of the underlying claim unless we affirmatively determine that the threshold showing warranting the certificate of appealability—"a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2)—is made. *See United States v. Gobert,* 139 F.3d 436, 438 (5th Cir.1998). Given, however, that the claim of ineffective assistance under the *Strickland* test has been fully briefed and argued, we essentially rule on the merits and the certificate of appealability at the same time.

### Sixth Amendment

The Sixth Amendment ensures, among other things, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right—the right to counsel—translates more specifically into "the right to the effective assistance of counsel." *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052.

In some cases, the determination of whether effective assistance of counsel was provided is a *per se* determination. *See Solina v. United States,* 709 F.2d 160 (2d Cir.1983). Other cases are considered under the two-part test articulated in *Strickland,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. This case is one of the latter.

### Per Se Cases

■ In *Solina,* this court determined that in some situations purported counsel is *per se* unable to be "counsel" under the Sixth Amendment. *Solina,* 709 F.2d 160. This *per se* determination moots the need for any more extensive inquiry into the actual effectiveness of counsel.

■ We have consistently acknowledged, however, that we are disinclined to resort to this *per se* rule. *See Bellamy v. Cogdell,* 974 F.2d 302, 306 (2d Cir.1992) (in banc) ("we have applied the *per se* rule 'without enthusiasm'") (internal citation omitted). We have found a *per se* violation in only two situations: when, unknown to the defendant, counsel was, at the time of representation, "(1) not duly licensed to practice law because of a failure to ever meet the substantive requirements for the practice of law, . . . or (2) implicated in the defendant's crimes." *Id.* (internal citations omitted). The instant case falls into neither category.

In *Solina,* the counsel at issue "posed as a lawyer but . . . had not, despite two attempts, passed the New York State bar examination, for that reason had not become a member of the New York bar, and was not a member of any other bar." 709 F.2d at 161. This court held that the defendant, Solina, who was represented at trial and on appeal by the lawyer-imposter, was entitled to a new trial, notwithstand-

---

**3.** 28 U.S.C. § 2253(c) provides that

(c)(1) Unless a circuit . . . judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from
  (A) the final order in a habeas corpus proceeding . . .; or
  (B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

ing the fact that the defendant was faced with overwhelming evidence against him and likely would be convicted again, as he had been under the representation of the lawyer-imposter. *Id.* at 163–69. While we did "not intimate that any technical defect in the licensed status of a defendant's representative would amount to a violation of the Sixth Amendment," the fact that counsel in *Solina* was not "authorized to practice law in any state" was a defect so severe that Solina's conviction could not stand. *Id.* at 167.

In *United States v. Novak*, 903 F.2d 883 (2d Cir.1990), the counsel at issue made false representations which led to his admission to practice law in New York State without having to take the bar examination. *Id.* at 885. Among the pertinent facts which this court examined were the facts that the counsel left law school upon being "dropped for poor scholarship," and, prior to leaving law school, "he had failed 6 ... hours [of courses] and received unsatisfactory grades in an additional 22 hours." *Id.* In determining that the representation by counsel at issue was *per se* insufficient under the Sixth Amendment, we said that

> When the accused has been deprived of representation by counsel, he is entitled to relief without proving that he was prejudiced by the deprivation.... In general, the Sixth Amendment guarantee is not satisfied if the accused is represented by a person who, for failure to meet substantive bar admission requirements, has never been admitted to the practice of law in any jurisdiction.

*Id.* at 887.

After discussing the few cases dealing with similar issues, we concluded that

> In each of these cases, the defect leading to the so-called attorney's nonlicensure was a serious substantive flaw, either a demonstrated inability to meet the threshold criteria of competence in the law (as in ... [the] failure of the bar examination), or an impermissible bypassing of the processes that would permit the state to ascertain such compe-

tence (as in ... [the] failure even to take the bar examination), or an ascertainable failure to meet the state's standard for high moral character (as in ... the [making of] misrepresentations to the state [by counsel] leading it to deny [counsel] admission notwithstanding his passing score on the bar examination). None of these rulings purported to establish a *per se* standard of Sixth Amendment violation for flaws in licensure, and in *Solina*, we cautioned that we did "not intimate that any technical defect in the licensed status of a defendant's representative would amount to a violation of the Sixth Amendment." 709 F.2d at 167.

*Id.* at 888.

Serrano's removal from the rolls in the Eastern District, for failure to appear at sentencing hearings in an unrelated case, does not fall into either of the narrow categories previously recognized by this court as a *per se* violation of the Sixth Amendment. As the district court found, the defect in Serrano's qualifications was "more than merely technical," but it was "not the same as someone who has been disbarred or who has never been licensed to practice law at all." 998 F.Supp. at 215; *accord United States v. Maria–Martinez*, 143 F.3d 914, 917 (5th Cir.1998) (attorney's suspension from practice in Fifth Circuit, based on failure to file documents in connection with unrelated appeal, "did not arise from a technical failure to meet requirements, [but] also did not result from a demonstrated lack of legal knowledge").

Nor do the rationales for the application of the *per se* rule warrant extension of the rule to the facts of this case. As we observed in *Bellamy*:

> We have advanced two rationales for applying the *per se* rule. The first is "jurisdictional" and applies in cases where the attorney is not duly licensed at the time of trial. It stems from the Supreme Court's decision in *Johnson v. Zerbst*, 304 U.S. 458, 468, 58 S.Ct. 1019,

82 L.Ed. 1461 (1938), that the failure to provide a criminal defendant with counsel created "a jurisdictional bar to a valid conviction." *See Solina,* 709 F.2d at 168–69 (discerning no meaningful distinction between total absence of representation and representation by unlicensed counsel). The second rationale is based on notions of conflict of interest, and applies in cases both where the lawyer is not duly licensed, *see Novak,* 903 F.2d at 890; *Solina,* 709 F.2d at 164, and where the lawyer is implicated in the crimes of his or her client, *see [United States v.] Cancilla,* 725 F.2d [867,] 870 [ (2d Cir.1984) ]. In these circumstances, the defense is necessarily compromised because the advocate ordinarily "cannot be wholly free from fear of what might happen if a vigorous defense should lead the prosecutor or the trial judge to inquire into his [or her] background and discover his [or her] lack of credentials[,]" *Solina,* 709 F.2d at 164, or own wrongdoing. Regardless of the facts presented, application of the *per se* rule must be justified under one or both of these rationales.

*Bellamy,* 974 F.2d at 306–07.

This case does not implicate the first of these rationales, because Serrano's disqualification in the Eastern District cannot be taken to mean that he was no "counsel" at all. Serrano was not welcome to practice in the United States District Court for the Eastern District of New York, but he remained a member of the New York and Puerto Rico bars, and the judge who struck Serrano's name from the rolls apparently was amenable to an application for reinstatement. *See Maria–Martinez,* 143 F.3d at 917 (declining to apply *per se* rule where attorney was barred from practice in the Fifth Circuit but "was a member of the Texas bar throughout the proceedings").

With respect to the second rationale stated in *Bellamy,* Serrano had some reason to fear discovery that he had been appearing in the Eastern District without authorization. Although Serrano subsequently claimed to believe that he could not have been stricken from the rolls without formal notice from the Clerk of the Court, he had been clearly informed in open court that his name was already stricken from the rolls. Nevertheless, it was unlikely that Serrano would face criminal prosecution, and his potential conflict was "much less severe ... than that of an attorney who is connected with the crime or who has never been licensed to practice law in any jurisdiction." *See Maria–Martinez,* 143 F.3d at 918. Accordingly, rather than finding a *per se* violation of the Sixth Amendment, the district court properly analyzed Serrano's potential conflict of interest in conjunction with the *Strickland* test, which we discuss below.

In sum, we conclude that, because Hurel–Guerrero was represented by an attorney who remained licensed to practice in New York and Puerto Rico, his Sixth Amendment right to counsel was not violated *per se* by the attorney's prior disqualification from appearance in the Eastern District.

### Analysis Under Strickland v. Washington

■ A claim that counsel was not the best counsel does not automatically translate into a meritorious ineffective assistance of counsel claim under the Sixth Amendment. The Supreme Court held in *Strickland* that "the proper standard for attorney performance is that of reasonably effective assistance." *Id.,* 466 U.S. at 687, 104 S.Ct. 2052. Specifically, a party claiming ineffective assistance of counsel in violation of the Sixth Amendment must show (1) that his or her attorney's performance fell below an "objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kieser v. State of New York,* 56 F.3d 16, 18 (2d Cir.1995) (*quoting Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052).

■ Even if we assume for the sake of argument that the first prong was satisfied, the second prong was not satisfied. Hurel–Guerrero has not shown a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

A reasonable probability that the outcome of the proceeding would have been different is established when there is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Hurel–Guerrero argues that Serrano's errors which undermine confidence in the ultimate sentence include asking for the *Fatico* hearing, failing to call Hurel–Guerrero to counter the government's witnesses at the hearing, and failing to convince him to plead earlier. However, Hurel–Guerrero has made no compelling argument that there is a reasonable probability that these tactical decisions resulted in an outcome that would have otherwise been different.

Though Hurel–Guerrero faults Serrano for not calling Hurel–Guerrero as a witness to rebut the government witnesses at the *Fatico* hearing, the transcript of the hearing makes clear that Hurel–Guerrero spoke repeatedly. For example, he contended that, notwithstanding the fact that he admittedly gave "ten, fifteen, twenty" labels to the drug traffickers, his assistance in the drug trafficking was minimal. On appeal, he elaborates on nothing substantial to which he would have testified at the *Fatico* hearing in addition to what he actually said therein.

Though the district court opinion quoted relevant portions of the *Fatico* hearing which indicated that Serrano did not plan his strategy in accordance with the purpose served by such a hearing, it does not follow that there is a sufficient probability that Hurel–Guerrero would have gotten a lesser sentence, but for Serrano's strategy. To the contrary, we agree with the district court that "even the most competent of counsel could not have altered the facts that were disclosed at the hearing." 998 F.Supp. at 216. Furthermore, while a review of the record makes clear that another attorney might have decided not to go forward with a *Fatico* hearing given the damning testimony that could be proffered in support of Hurel–Guerrero's role in the conspiracy and the amount of cocaine for which Hurel–Guerrero could be held responsible, the district court ultimately applied a base offense level that was the same as the Government's plea agreement estimate and lower than the level recommended by the Probation Department. Even if Serrano had not asked for a *Fatico* hearing, there would have been no basis for a lower offense level or for a minor role adjustment.

■ Finally, the district court examined whether incompetence on the part of Serrano, or the potential conflict of interest discussed above,[4] might have delayed the plea agreement, which was not entered into until after a jury had been empaneled. Specifically, the district court speculated that if the plea agreement had been reached sooner, the government might have agreed to recommend a downward offense-level adjustment for minor role. *See* 998 F.Supp. at 215. However, the record unmistakably reveals that Hurel–Guerrero did not play a minor role, that the government never believed he had played a minor role, and that the government was flatly unwilling to negotiate with respect to a minor-role adjustment.[5] Ac-

4. When an ineffective assistance claim is based on an asserted conflict of interest, "a defendant is entitled to a presumption of prejudice if he can demonstrate that his attorney labored under an actual conflict of interest and that the actual conflict of interest adversely affected his lawyer's performance." *United States v. White,* 174 F.3d 290, 295 (2d Cir.1999).

5. The district court concluded that the delay in reaching a plea agreement was attributable to Hurel–Guerrero's own stubborn insistence on going to trial. *See* 998 F.Supp. at 217. Because we conclude that the government was unwilling to enter into a plea agreement more advantageous to Hurel–Guerrero, we need not address that determination.

cordingly, the timing of Hurel–Guerrero's plea agreement does not give rise to a valid ineffective assistance claim.

## Conclusion

For the above-stated reasons, the district court is affirmed.