**UNITED STATES of America, Appellee,**

v.

**Pedro Nelson RONDON and Nelson Emmanuel Rondon–Trinidad, Defendants–Appellants.**

**Docket Nos. 98–1717, 99–1181.**

United States Court of Appeals, Second Circuit.

Argued: Feb. 2, 2000

Decided: Feb. 28, 2000

---

Rachel Israel (Lee Ginsberg, on the brief), New York, NY, for Defendants–Appellants.

Robert R. Strang, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney for the Southern District of New York, and Joshua G. Berman and Baruch Weiss, Assistant United States Attorneys for the Southern District of New York, of counsel), for Appellee.

Before: OAKES, CABRANES, and SACK, Circuit Judges.

PER CURIAM.

This appeal requires us to consider the effect of an attorney's disbarment by state authorities during a defendant's federal trial. Defendants Pedro Nelson Rondon ("Rondon") and Emmanuel Rondon–Trinidad ("Rondon–Trinidad"), two brothers, appeal from judgments of the United States District Court for the Southern District of New York (John E. Sprizzo, *Judge*), convicting them, following a jury trial, of conspiracy to distribute and possess with intent to distribute cocaine, and sentencing them principally to 169 months and 151 months of imprisonment, respectively. Although defendants raise several arguments on appeal, we address in this opinion only one of these arguments: that Rondon's counsel was *per se* ineffective because he was disbarred during the trial by New York State. We consider defendants' remaining arguments in an unpublished summary order filed simultaneously with this opinion. *See United States v. Rondon*, 205 F.3d 1326 (2d Cir.2000). For

the reasons described herein, and in the accompanying summary order, we affirm the judgments of the District Court.

## I.

The following facts are relevant to the issue discussed in this opinion and, except where noted otherwise, are undisputed. In July 1997, Rondon, Rondon–Trinidad, and a third man—Luis Fernàndo Bravo–Betancur ("Bravo–Betancur")—were arrested and charged with conspiracy to distribute and possess with intent to distribute cocaine. Five months later, after entering into a cooperation agreement with the Government, Bravo–Betancur pleaded guilty to a two-count superseding information. Rondon and Rondon–Trinidad, on the other hand, elected to go to trial.

Trial of Rondon and Rondon–Trinidad commenced on June 1, 1998. At trial, the Government's proof showed that Rondon and Rondon–Trinidad were recruited in April 1997 by Bravo–Betancur to participate in a scheme to import 40 kilograms of cocaine into the United States from Colombia. As part of the scheme, Bravo–Betancur arranged in Colombia for cocaine to be compressed and inserted into thirteen double-walled metal support beams under the wooden floor of a shipping container. The container was then shipped to New York City, where Rondon and Rondon–Trinidad had made prior arrangements to rent a warehouse and to buy equipment for extracting the cocaine from the beams. Before defendants and Bravo–Betancur received the shipment, however, an inspector from the U.S. Customs Service conducted a routine inspection of the container, and discovered the cocaine in the container's beams. As a result of this discovery, and pursuant to a court order, Customs Service agents installed a hidden surveillance camera in the defendants' warehouse. On July 2, 1997, after undercover Customs Service agents delivered the container to the warehouse, Rondon, Rondon–Trinidad, and Bravo–Betancur were videotaped by the surveillance camera working in virtual darkness to remove the cocaine-filled beams from the container. This removal process took about four hours, after which defendants and Bravo–Betancur were arrested.

Rondon was represented at trial by Julio Cesar Rojas; Rondon–Trinidad was represented by other counsel. On June 15, 1998, after the jury charge conference but before closing arguments, Rojas notified the District Court and the Government that he had just learned that the New York State Appellate Division, Second Department ("Second Department"), had revoked his legal license as of June 8, 1998. *See In re Rojas,* 242 A.D.2d 198, 674 N.Y.S.2d 91 (2d Dep't 1998).[1] In the presence of both Rondon and Rondon–Trinidad, the District Court asked Rojas a series of questions about the situation. The Court also questioned Rondon to make sure that he understood fully his attorney's situation and the implications. Rondon stated explicitly that he was satisfied with Rojas's services, that he felt he had effective assistance of counsel to date, and that he wanted Rojas to finish the case.

Although Rondon stated that he was willing to proceed notwithstanding the situation, the District Court elected instead to postpone closing arguments. The District Court then contacted the Presiding Justice of the Second Department to explore the facts and circumstances underlying Rojas's disbarment, and to determine whether the Second Department could lift

---

**1.** Rojas was disbarred "on default" for failure to answer a petition charging him with "four charges of professional misconduct, including making material misrepresentations about his disciplinary history, making material misrepresentations under oath, and failing to refund money paid to him for services not yet completed at the time he was relieved by new counsel." 242 A.D.2d at 199, 674 N.Y.S.2d 91. Because Rojas failed to answer the petition, the charges against him were "deemed established." *Id.*

the disbarment for the duration of the trial. After returning to the parties, the District Court informed Rojas that he should file an immediate application to lift the disbarment for the duration of the trial. The District Court then made another inquiry as to whether Rondon understood the situation. Rondon stated expressly that he did understand. The trial was then adjourned.

Rojas apparently filed a motion with the Second Department that same day, for in a Decision and Order dated June 15, 1998, the Second Department "extend[ed] the effective date of [Rojas's] disbarment, nunc pro tunc, from June 8, 1998, to June 19, 1998, for the limited purpose of allowing him . . . to complete the pending trial to verdict." The following day, the District Court held another conference to discuss the situation. After ensuring again that Rondon, Rondon–Trinidad, and their respective attorneys fully comprehended the situation, the District Court confirmed that Rojas had received word of the Second Department's order temporarily lifting his disbarment. The District Court then asked Rojas again if he had advised Rondon concerning the situation, and Rojas indicated that he had done so. Finally, the District Court inquired of Rondon whether he wanted to proceed with the trial, and Rondon stated that he did.

On June 17, 1998, the jury returned guilty verdicts against both Rondon and Rondon–Trinidad. On December 7, 1998, the District Court sentenced Rondon to 169 months' imprisonment, to be followed by five years' supervised release, and imposed a mandatory $100 special assessment. On March 22, 1999, the District Court sentenced Rondon–Trinidad to 151 months' imprisonment, to be followed by five years' supervised release, and imposed

a mandatory $100 special assessment. This appeal followed.

## II.

The Sixth Amendment to the Constitution guarantees to criminal defendants effective assistance of counsel. *See, e.g., Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Generally, claims of ineffective assistance of counsel are analyzed under the familiar *Strickland* framework, which requires a defendant to show "(1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. O'Neil,* 118 F.3d 65, 71 (2d Cir.1997) (internal quotation marks omitted). In certain limited situations, however, a defendant may establish *per se* ineffective assistance of counsel, which means that he need not make a particularized showing of prejudice to obtain relief. *See id.* at 70–71. The question in this case is whether Rojas's disbarment by state authorities during defendants' federal trial qualifies as such a situation. We hold it does not.[2]

Since we first recognized the *per se* rule in *Solina v. United States,* 709 F.2d 160 (2d Cir.1983), we have had many occasions to consider whether circumstances warrant application of the rule. To date, however, we have applied the *per se* rule in only two situations: when, unknown to the defendant, counsel was, at the time of representation, "(1) not duly licensed to practice law because of a failure ever to meet the substantive requirements for the practice of law, *see United States v. Novak,* 903 F.2d 883, 890 (2d Cir.1990); *Solina v. United States,* 709 F.2d 160, 167 (2d Cir. 1983), or (2) implicated in the defendant's

---

**2.** Although Rondon–Trinidad abstains from criticizing his own counsel, he asserts spillover prejudice from the alleged *per se* ineffectiveness of Rojas, his brother's attorney. It is well established, however, that a defendant lacks standing to challenge the effectiveness

of his codefendant's trial counsel. *See, e.g., United States v. Guanti,* 421 F.2d 792, 799 (2d Cir.1970). Accordingly, Rondon–Trinidad lacks any claim of *per se* ineffective assistance, and in the discussion that follows we focus only on Rondon's claim.

crimes, *see United States v. Cancilla,* 725 F.2d 867, 870 (2d Cir.1984)." *Bellamy v. Cogdell,* 974 F.2d 302, 306 (2d Cir.1992) (en banc) (parentheticals omitted); *accord Hurel Guerrero v. United States,* 186 F.3d 275, 279 (2d Cir.1999); *see also Tippins v. Walker,* 77 F.3d 682, 688–89 (2d Cir.1996) (stating that when counsel sleeps through critical portions of a trial, it may constitute *per se* ineffective assistance of counsel). In every other situation, we have refused to apply the *per se* rule. *See Hurel Guerrero,* 186 F.3d at 279–81 (counsel suspended from practicing in federal district court, but admitted in New York State and Puerto Rico); *Bellamy,* 974 F.2d at 306–08 (counsel suspended from practice after trial based on pretrial admission of mental and physical incapacity); *Kieser v. New York,* 56 F.3d 16, 17–18 (2d Cir.1995) (per curiam) (counsel not admitted to practice *pro hac vice* in New York and, at arraignment, temporarily suspended from practice in New Jersey for failure to pay bar dues); *United States v. Eisen,* 974 F.2d 246, 264–65 (2d Cir.1992) (counsel disqualified from appearing in an unrelated case at the time of trial); *United States v. Aiello,* 900 F.2d 528, 530–32 (2d Cir.1990) (counsel under investigation, and eventually indicted, in another district for tax evasion and other offenses); *Waterhouse v. Rodriguez,* 848 F.2d 375, 382–83 (2d Cir.1988) (counsel disbarred during pretrial proceeding, but withdrew after becoming aware of disbarment). Moreover, even in the two situations where we have found the *per se* rule applicable, we have resorted to it "without enthusiasm." *Solina,* 709 F.2d at 169; *see Hurel Guerrero,* 186 F.3d at 279 ("We have consistently acknowledged ... that we are disinclined to resort to [the] *per se* rule."); *Waterhouse,* 848 F.2d at 383 ("[W]e have never purported to expand applicability of the rule beyond the sort of egregious conduct present in *Solina* and *Cancilla.*"); *see also Tippins,* 77 F.3d at 686 ("We are reluctant to extend a rule of *per se* prejudice in any new direction.").

Contrary to defendants' argument, this case does not fit into either of the narrow categories of cases calling for application of the *per se* rule. To be sure, Rojas's disbarment was more than a "technical defect" in his licensed status. *Kieser,* 56 F.3d at 17. However, Rojas was duly licensed to practice in New York State at the start of the trial (and had been since 1987), was readmitted to practice *nunc pro tunc* for the duration of the trial, and, it appears, was kept on the rolls in the Southern District of New York throughout the trial. *Cf. In re Ruffalo,* 390 U.S. 544, 547, 88 S.Ct. 1222, 20 L.Ed.2d 117 ("Though admission to practice before a federal court is derivative from membership in a state bar, disbarment by the State does not result in automatic disbarment by the federal court."), *modified,* 392 U.S. 919, 88 S.Ct. 2257, 20 L.Ed.2d 1380 (1968). Thus, unlike the "attorneys" in *Solina* and *Novak,* Rojas had "met the State's normal substantive requirements for admission to the New York State Bar," *Novak,* 903 F.2d at 890, and his "competence to practice law" had been tested, *id.* Moreover, Rojas's temporary lack of authorization to practice law in New York did not stem from a reason going to legal ability, such as failure to pass a bar examination, *see Solina,* 709 F.2d at 167, or from operation of "a state-law provision directed toward attorneys 'who, for one reason or another, have become incompetent to represent clients,'" *Novak,* 903 F.2d at 889. Indeed, upon Rojas's motion, the Second Department saw fit to restore his license to practice for the duration of defendants' trial. In short, unlike in *Solina* and *Novak,* in this case there was a "foundation for an assumption that defense counsel had the legal skills necessary to permit him to become a 'duly admitted' member of the bar." *Id.* at 890.

■ Additionally, we conclude that neither of the two underlying rationales for the *per se* rule would support extending the rule to the facts of this case. *See Hurel Guerrero,* 186 F.3d at 280–81 (discussing the two rationales). With respect to the first rationale—that "the failure to

provide a criminal defendant with counsel create[s] a jurisdictional bar to a valid conviction," *id.* at 281 (internal quotation marks omitted)—Rojas's disbarment in New York State "cannot be taken to mean that he was no 'counsel' at all." *Id.* He was, after all, readmitted *nunc pro tunc* by New York State for the duration of the trial, and he remained on the rolls in the Southern District of New York throughout the trial. As for the second rationale— that an advocate who is not duly licensed or is implicated in his client's crimes labors under a "conflict of interest," *id.*—any potential problem was cured by Rojas's prompt action in bringing his disbarment to the attention of his client and the District Court. Unlike counsel in *Novak, Solina,* and *Cancilla,* Rojas "had no skeletons in his closet giving rise to a conflict of interest that would have inhibited him from defending [his client] vigorously." *Bellamy,* 974 F.2d at 308. Indeed, if anything, the charges pending against Rojas likely "provided an incentive for the vigorous efforts he appears to have expended." *Waterhouse,* 848 F.2d at 383.[3]

In sum, because Rojas was readmitted to practice in New York *nunc pro tunc* for the duration of the trial, was on the rolls in the Southern District of New York throughout the trial, and brought his disbarment promptly to the attention of his client and the District Court, and because the District Court conducted an appropriate examination of any possible conflict of interest between Rojas and his client, we conclude that Rojas's disbarment did not give rise to a *per se* violation of the Sixth Amendment.

### III.

For the reasons stated above, and the reasons stated in the summary order filed

herewith, the judgments of the District Court are affirmed.

---

3. For this reason, we reject defendants' argument that the District Court erred in not holding a *Curcio* hearing, *see United States v. Curcio,* 680 F.2d 881 (2d Cir.1982), to obtain a waiver from Rondon. *See, e.g., United States v. Levy,* 25 F.3d 146, 152–53 (2d Cir. 1994) (discussing *Curcio* and related procedures). Insofar as Rojas's disbarment created a potential conflict of interest between Rojas and Rondon, the District Court more than satisfied its "inquiry obligation" through its colloquies with Rojas and Rondon. *United States v. Leslie,* 103 F.3d 1093, 1098 (2d Cir. 1997).