UNITED STATES of America, Respondent–Appellee,

v.

John NOVAK, Petitioner–Appellant.

No. 671, Docket 89–1437.

United States Court of Appeals, Second Circuit.

Submitted Jan. 30, 1990.

Decided May 14, 1990.

George J. Terwilliger, III, U.S. Atty., D. Vt., Burlington, Vt. (David V. Kirby, Chief, Crim. Div., R. Jeffrey Behm, Asst. U.S. Atty., Burlington, Vt., of counsel), for respondent-appellee.

Joseph K. Garneau, West Hempstead, N.Y., for petitioner-appellant.

Before OAKES, Chief Judge, and KEARSE, and FLETCHER,* Circuit Judges.

KEARSE, Circuit Judge:

Petitioner John Novak appeals from a judgment of the United States District Court for the District of Vermont, James S. Holden, *Judge*, dismissing his petition pursuant to 28 U.S.C. § 2255 (1982) for vacation of his conviction in that court of narcotics offenses on the ground that his Sixth Amendment right to the effective assistance of counsel was violated because his now-disbarred trial attorney, Joel Barnet Steinberg, had obtained admission to the New York State Bar through fraudulent means. The district court dismissed the petition, ruling that Novak's Sixth Amendment right was not violated because Steinberg had in fact been admitted as an attorney and because, in any event, Novak had also been represented in the criminal proceeding by local counsel. For the reasons below, we conclude that representation by Steinberg was *per se* insufficient to satisfy the Sixth Amendment requirement, and we reverse and remand for vacation of the judgment of conviction.

## I. BACKGROUND

In 1981–82, Novak was prosecuted in the district court in Vermont on a six-count indictment charging him with, *inter alia,* importation of marijuana, possession with intent to distribute marijuana, and conspiracy to violate the federal narcotics laws. He was found guilty on all counts and was sentenced to five years' imprisonment, to be followed by a five-year term of special parole, and assessed a total of $60,000 in fines. His conviction was affirmed by this Court in *United States v. Ames,* 729 F.2d 1440 (2d Cir.1983). As discussed below, he was represented by Steinberg at trial.

### A. *Steinberg's Representation of Novak*

In anticipation of his arrest and indictment on the above charges, Novak, on the recommendation of his wife's employer, retained New York-based Joel Steinberg as his attorney. When Novak was arraigned, Norman Blais, a member of the Vermont bar and the Vermont district court, moved for Steinberg's admission to the district court in Vermont pursuant to the local court rules governing the temporary admission of nonresident attorneys. Those rules allowed attorneys admitted to the bar of, *inter alia,* any district court within the Second Circuit, "whose professional character is good," to practice in the district court in Vermont upon motion of an attorney of the court and upon taking the proper oath. Steinberg represented that he had been duly admitted to, *inter alia,* the New York Court of Appeals, the federal district courts for the Southern and Eastern Districts of New York, the Court of Appeals for the Second Circuit, and the Supreme Court of the United States. The motion for his temporary admission to the district court in Vermont to represent Novak was granted.

Steinberg represented Novak at his arraignment. Both Blais and Steinberg appeared on Novak's behalf at several pretrial hearings and at the jury selection. After the jury was empaneled, Blais was excused from daily attendance. Steinberg represented Novak at trial.

Following the verdicts, but before sentencing, Blais and Steinberg filed motions

---

* Honorable Betty B. Fletcher, of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

for a judgment of acquittal and a new trial. Shortly thereafter, Novak sought the removal of Blais and Steinberg as his attorneys. He later rescinded this request and continued to be represented by both attorneys on the posttrial motions. These motions marked Steinberg's final actions on behalf of Novak.

At sentencing, Novak was represented only by Blais. Blais was appointed under the Criminal Justice Act to represent Novak on his appeal to this Court. Thereafter, Novak, represented by Blais, filed his first § 2255 petition, claiming a denial of effective assistance of counsel on the ground that Steinberg should have initiated plea negotiations after the trial evidence against Novak appeared to be strong. That petition was denied in an Opinion and Order dated July 7, 1983 ("July 1983 Opinion").

### B. *Steinberg's Admission to Practice and His Disbarment*

In general, a person gains admission to practice law in the State of New York by graduating from law school, passing a bar examination, and withstanding scrutiny for moral fitness. In 1970, the New York Board of Law Examiners was permitted to grant a certificate allowing an applicant who had graduated from an approved law school to dispense with the bar examination if,

> after January 1, 1963, and after completing in an approved law school two-thirds of the requirements for graduation and for a first degree in law, his course of law school study was interrupted by active service in the armed forces for not less than twelve months.

N.Y.Ct.App.R.Pt. 526.

Steinberg was admitted to the practice of law in New York in July 1970. He did not take the bar examination but instead obtained a certificate of dispensation, apparently on the representation that his law school education had been interrupted by his service in the armed forces. In fact, however, he did not meet all of the pertinent criteria. Steinberg attended New York University School of Law ("NYUSL")

for two years, leaving in May 1964 without graduating. He did not enter the armed forces until April 1965. And when Steinberg left NYUSL in May 1964, he did so because he was " 'dropped for poor scholarship.' " *In re Steinberg*, 137 A.D.2d 110, 112, 528 N.Y.S.2d 375, 376 (1st Dep't) (per curiam) (quoting certificate of NYUSL Acting Associate Dean), *app. denied*, 72 N.Y.2d 807, 533 N.Y.S.2d 56, 529 N.E.2d 424 (1988). Thus, his studies were not interrupted by his military service.

Even if military service had caused the 1964 interruption, Steinberg did not come within the above rule. When he left law school in 1964, though he had enrolled in 57 of the 80 course hours required for graduation, he had failed 6 of those hours and received unsatisfactory grades in an additional 22 hours. He was allowed to return to law school in 1968 on the condition that he repeat those 28 hours of courses. Thus, when his law school career was interrupted, he had not successfully completed ⅔ of his course work. Upon his representations, however, Steinberg was admitted to practice without being required to take the bar examination.

In November 1987, following Steinberg's arrest on highly publicized charges of child abuse, a proceeding was commenced in the New York Supreme Court, Appellate Division, seeking Steinberg's disbarment pursuant to N.Y.Jud.Law § 90(2) (McKinney 1983) on account of the misrepresentations made in connection with his application for admission to practice. In that proceeding, Steinberg did not deny the allegation that he had been ineligible for waiver of the bar examination requirement, but he opposed disbarment on the ground, *inter alia*, that the proceeding had been instituted only because he had been charged with a notorious crime.

Though Steinberg's application for the certificate of dispensation was no longer on record, the Appellate Division concluded that the application had been fraudulent. The court found that the documents of record revealed that Steinberg was clearly ineligible for the waiver and that Steinberg plainly knew it. It concluded that "[s]ince

[Steinberg] clearly was not entitled to the waiver which was issued, and in the absence of proof that the Law Examiners acted contrary to their oath, we are constrained to infer that they were defrauded, because no other rational explanation exists for the issuance of the waiver." *In re Steinberg,* 137 A.D.2d at 114, 528 N.Y.S.2d at 378. Accordingly, the court granted the petition for disbarment. Its order stated, *inter alia,* that Steinberg's "admission to practice as an attorney and counselor-at-law is revoked, and respondent's name stricken from the role of attorneys and counselors-at-law in the State of New York effective[ ] immediately." Order dated May 19, 1988.

## C. *The Present Petition*

In April 1989, Novak filed his present § 2255 petition, again contending that his right to the effective assistance of counsel had been violated. This petition alleged that Novak had retained Steinberg on the strength of Steinberg's representation that he was a duly licensed attorney, and that Steinberg "was never in fact an 'attorney' " because he had obtained admission to the bar under false pretenses.

In an Opinion and Order dated August 22, 1989 ("August 1989 Opinion"), the district court dismissed the petition on the ground that Steinberg had in fact "been admitted and was enrolled as an attorney in New York." *Id.* at 6. The court also stated that Novak was "represented throughout by competent associate counsel." *Id.* at 7. The court concluded that

> [a]ny adverse presumption that may develop from the undiscovered deception of Steinberg in the procurement of his admission to practice in the courts of New York in 1970 is relieved by the proposition that the courts "may assume with confidence that most counsel, whether retained or appointed will protect the rights of the accused."

*Id.* at 8–9 (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980)). This appeal followed.

## II.  DISCUSSION

■  On appeal, Novak contends that his conviction should be vacated on the authority of *Solina v. United States,* 709 F.2d 160 (2d Cir.1983). Though *Solina* differs somewhat from the present case, in that Solina was represented by a person who had never been licensed to practice, we agree that, under *Solina* 's analysis, Steinberg's representation of Novak could not constitute assistance of counsel within the meaning of the Sixth Amendment.

### A.  *Representation By One Never Licensed as an Attorney*

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This provision gives the accused the right to the effective assistance of counsel at all critical stages of a criminal proceeding, including the pretrial stages, trial, and sentencing. *See Strickland v. Washington,* 466 U.S. 668, 684–86, 104 S.Ct. 2052, 2062–63, 80 L.Ed.2d 674 (1984); *Mempa v. Rhay,* 389 U.S. 128, 134, 88 S.Ct. 254, 256–57, 19 L.Ed.2d 336 (1967); *United States v. Wade,* 388 U.S. 218, 236–37, 87 S.Ct. 1926, 1937–38, 18 L.Ed.2d 1149 (1967). Assistance of counsel is mandated by the Sixth Amendment because lawyers "are the means through which the other rights of the person on trial are secured," *United States v. Cronic,* 466 U.S. 648, 653, 104 S.Ct. 2039, 2043, 80 L.Ed.2d 657 (1984), and through which the prosecution's case is subjected to "meaningful adversarial testing," *id.* at 656, 104 S.Ct. at 2045.

■  When the accused has been deprived of representation by counsel, he is entitled to relief without proving that he was prejudiced by the deprivation, for "the assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.' " *Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978) (quoting *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). Indeed, the assistance of counsel is so fundamental a

requirement that it has been termed "an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty." *Johnson v. Zerbst*, 304 U.S. 458, 467, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461 (1938); *see Solina v. United States*, 709 F.2d at 168–69.

■ In general, the Sixth Amendment guarantee is not satisfied if the accused is represented by a person who, for failure to meet substantive bar admission requirements, has never been admitted to the practice of law in any jurisdiction. *See, e.g., Solina v. United States*, 709 F.2d at 167; *People v. Felder*, 47 N.Y.2d 287, 293, 418 N.Y.S.2d 295, 297, 391 N.E.2d 1274, 1275–76 (1979); *see also Huckelbury v. State*, 337 So.2d 400, 403 (Fla.Dist.Ct.App.1976). In *Solina*, the defendant was represented by one Coleman, who had begun law school but had left to enter military service during World War II. Some years later, he returned to law school and received his Bachelor of Laws degree. Then, despite two attempts, he failed the New York State bar examination. Coleman was never admitted to the practice of law in New York or any other state. We found that Coleman's representation of Solina violated Solina's Sixth Amendment right. We interpreted the guarantee of "[a]ssistance of [c]ounsel" to mean, at the least, "representation by a licensed practitioner," 709 F.2d at 167, and we concluded that a defendant's Sixth Amendment right has not been honored where his counsel was "not authorized to practice law in any state, and the lack of such authorization stemmed from failure to seek it or from its denial for a reason going to legal ability, such as failure to pass a bar examination, or want of moral character." *Id.*

Though Solina could not show that he had actually been prejudiced by Coleman's representation, since the evidence of his guilt was "overwhelming," *id.* at 163; *see also id.* at 165 ("[t]here is simply nothing to suggest that a licensed lawyer for Solina could have arrived at a plea bargain, provided a single juror with a rational basis for having a reasonable doubt, induced the judge to impose a lesser sentence, or pre-vailed upon appeal, and everything to indicate that he could not"), we concluded that his conviction must be vacated since breach of the Sixth Amendment right to counsel is not subject to harmless error analysis. We noted that

> [t]he problem of representation by a person like Coleman is not simply one of competence—he may very well have had greater competence to represent a defendant in a criminal trial than some leaders of the profession who are expert in corporate financing or estate planning but have never examined or cross-examined a witness—but that he was engaging in a crime. Such a person cannot be wholly free from fear of what might happen if a vigorous defense should lead the prosecutor or the trial judge to inquire into his background and discover his lack of credentials. Yet a criminal defendant is entitled to be represented by someone free from such constraints.

*Id.* at 164 (footnote omitted).

The New York State Court of Appeals has similarly interpreted the Sixth Amendment's provision for "counsel" as guaranteeing "nothing less than a licensed attorney at law." *People v. Felder*, 47 N.Y.2d at 293, 418 N.Y.S.2d at 297, 391 N.E.2d at 1276. In *Felder*, the court considered the convictions of four defendants represented by a person "who was not, and had never been, admitted to the Bar of this State or of any other jurisdiction and who had not completed law school or otherwise satisfied the prerequisites for the practice of law." *Id.* at 291–92, 418 N.Y.S.2d at 296, 391 N.E.2d at 1275. In each case, the lower courts had rejected the defendants' motions to vacate their convictions, ruling that the pseudoattorney had been competent and that no prejudice had been shown. The Court of Appeals reversed, ruling that the harmless-error analysis was misplaced since "[a] lay person, regardless of his educational qualifications or experience, is not a constitutionally acceptable substitute for a member of the Bar." *Id.* at 293, 418 N.Y.S.2d at 297, 391 N.E.2d at 1276.

In *Huckelbury v. State*, 337 So.2d at 402–03, a Florida appeals court ruled that a

defendant's conviction must be vacated where he had been represented by one Pearce, a person who had received a law degree and passed the bar examination, but who had been denied admission to the bar because he failed to meet the moral standards for admission. The record indicated that Pearce was denied admission to the bar because he had been found to have misrepresented his academic and employment record.

■ In each of these cases, the defect leading to the so-called attorney's nonlicensure was a serious substantive flaw, either a demonstrated inability to meet the threshold criteria of competence in the law (as in Solina's counsel's failure of the bar examination), or an impermissible bypassing of the processes that would permit the state to ascertain such competence (as in Felder's counsel's failure even to take the bar examination), or an ascertainable failure to meet the state's standard for high moral character (as in Huckelbury's counsel's misrepresentations to the state leading it to deny him admission notwithstanding his passing score on the bar examination). None of these rulings purported to establish a *per se* standard of Sixth Amendment violation for flaws in licensure, and in *Solina,* we cautioned that we did "not intimate that any technical defect in the licensed status of a defendant's representative would amount to a violation of the Sixth Amendment." 709 F.2d at 167. As examples of cases in which mere technical flaws in licensure had not been deemed sufficient to deprive the accused of the right to counsel, *Solina* cited, *inter alia, Wilson v. People,* 652 P.2d 595 (Colo.1982) (counsel had graduated from an accredited law school and passed the bar examination and the requisite moral scrutiny but had simply failed to take the oath, which the state, upon discovery of that fact, allowed him to do), *cert. denied,* 459 U.S. 1218, 103 S.Ct. 1221, 75 L.Ed.2d 457 (1983); and *People v. Cornwall,* 3 Ill.App.3d 943, 277 N.E.2d 766 (1971) (out-of-state attorney had failed to seek admission *pro hac vice* ). *See also United States v. Bradford,* 238 F.2d 395, 397 (2d Cir.1956) (no *per se* Sixth Amendment violation where attorney was

duly admitted to state court but had failed to seek admission to federal court), *cert. denied,* 352 U.S. 1002, 77 S.Ct. 558, 1 L.Ed.2d 546 (1957); *State v. White,* 101 N.M. 310, 681 P.2d 736, 739 (Ct.App.1984) (same where duly admitted out-of-state attorney merely failed to comply with local rules requiring that he be accompanied by local counsel). We would agree with *Solina* that, unlike serious substantive defects, mere technical defects need not result in *per se* Sixth Amendment violations.

### B. *The Effect of Disbarment*

*Solina, Felder,* and *Huckelbury* involved persons who had never been licensed to practice law, and those courts had no need to consider what the outcome would have been if the defendant's counsel had been a member of the bar during the period of representation and had later been suspended or disbarred. The *Felder* court noted that it expressed no view as to the effect, under the Sixth Amendment, of a disbarment of the accused's counsel. 47 N.Y.2d at 294 n. 6, 418 N.Y.S.2d at 298 n. 6, 391 N.E.2d at 1277 n. 6.

This Court was concerned with the effect of disbarment in *Waterhouse v. Rodriguez,* 848 F.2d 375 (2d Cir.1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 564, 107 L.Ed.2d 558 (1989), which involved a defendant whose attorney, one LaFreniere, was disbarred for misappropriating client funds and failing to represent clients after accepting their fees. The order of disbarment, which was premised on conduct unrelated to the representation of Waterhouse, was entered on the second and final day of a pretrial hearing in Waterhouse's case. As soon as LaFreniere learned of his disbarment, he withdrew from representing Waterhouse. Successor counsel moved unsuccessfully for a new pretrial hearing on the ground of LaFreniere's disbarment, and the case came to us in connection with Waterhouse's habeas petition asserting that representation by LaFreniere on the day he was disbarred was a *per se* infringement of Waterhouse's Sixth Amendment right to counsel. We ruled that this claim must be rejected. There was no suggestion that

LaFreniere had not been duly and properly admitted to practice law, and implicit in our decision was the view that disbarment is not necessarily the equivalent of nonadmission. In addition, we noted that *Solina*'s discussion of the risks attendant on representation by a person who had not been duly admitted as an attorney had no applicability to LaFreniere, because as soon as LaFreniere became aware of his disbarment he withdrew. Thus, during his representation of Waterhouse, "LaFreniere had no reason to fear that vigorous advocacy on behalf of his client would expose him to" disclosure of, and penalties for, unauthorized practice. *Id.* at 383. We therefore concluded that Waterhouse had not "'lacked counsel' in any way implicating the concerns behind the per se rule of *Solina.*" *Id.*

In general, other courts that have dealt with the effect of disbarment or suspension have tended to follow the substantive-technical dichotomy discussed in *Solina.* For example, where the defendants' attorneys have been suspended for merely technical reasons such as nonpayment of bar dues, the courts have ruled these grounds insufficient to warrant a conclusion of *per se* violation of the right to counsel. *See, e.g., People v. Medler,* 177 Cal.App.3d 927, 930, 223 Cal.Rptr. 401, 402 (1986); *Johnson v. State,* 225 Kan. 458, 590 P.2d 1082, 1086–87 (1979) (cited in *Solina* ); *Hill v. State,* 393 S.W.2d 901, 904 (Tex.Crim.App.1965); *see also United States v. Mouzin,* 785 F.2d 682, 694–99 (9th Cir.) (where federal appeals court had suspended attorney from practice in that court for procedural defaults and kiting a check to court reporter in unrelated case, district court was not required automatically to suspend him immediately from practice in district court but rather had discretion to permit him to continue with lengthy trial without violating trial defendant's Sixth Amendment rights), *cert. denied,* 479 U.S. 985, 107 S.Ct. 574, 93 L.Ed.2d 577 (1986). In contrast, where an attorney was placed on an "inactive" attorneys list prior to defendant's trial pursuant to a state-law provision directed toward attorneys "who, for one reason or another, have become incompetent to represent clients," the court found a Sixth Amendment violation and vacated the defendant's conviction. *People v. Hinkley,* 193 Cal.App.3d 383, 389, 238 Cal.Rptr. 272, 275 (1987). *But see Commonwealth v. Vance,* 376 Pa.Super. 493, 546 A.2d 632, 637 (1988) (refusing to find Sixth Amendment violation, reasoning that disbarment, even on account of false statements in counsel's application for admission revealing lack of "good character," was not the equivalent of never having been admitted), *app. denied,* 521 Pa. 620, 557 A.2d 723 (1989).

The effect of the disbarment of Joel Steinberg himself has recently been considered by two of New York's trial-level courts. In both cases, the courts have vacated the convictions, though the rationales have somewhat differed. *See People v. Chin Min Foo,* 144 Misc.2d 589, 545 N.Y.S.2d 55 (Sup.Ct.N.Y.Co.1989); *People v. Williams,* 140 Misc.2d 136, 530 N.Y.S.2d 472 (Sup.Ct.Queens Co.1988).

In *Williams,* the court held that "[t]he disbarment of Mr. Steinberg as an attorney *with retroactive effect* by the Appellate Division, First Department, on May 19, 1988, furnished sufficient grounds to vacate defendant's judgment of conviction before this court." *Id.* at 140–41, 530 N.Y. S.2d at 475 (emphasis added). We are not inclined to adopt the reasoning of *Williams.* First, it is not clear to us that the First Department gave its order retroactive effect. Though that order stated that Steinberg's "admission to practice … [was] revoked," which could be viewed as a rescission having *nunc pro tunc* effect, nowhere did the order use the term "retroactive." Rather it repeatedly imposed restraints and ordered administrative steps that were to be "effective immediately." Further, even were the order intended to have retroactive effect in state court matters, we would not necessarily view it as retroactively affecting judgments in federal court. *See generally Theard v. United States,* 354 U.S. 278, 282, 77 S.Ct. 1274, 1276–77, 1 L.Ed.2d 1342 (1957) (state court disbarment "is not conclusively binding on the federal courts").

In *Chin Min Foo*, New York Supreme Court Justice Harold Rothwax ruled that the conviction of a defendant represented by Steinberg must be vacated, reasoning that "the term ['counsel,' as used in the Sixth Amendment,] does not include one who has procured the privilege of practicing law by fraud upon the licensing authorities in the first instance." 144 Misc.2d at 591, 545 N.Y.S.2d at 57. In distinguishing those cases in which courts have ruled that subsequent disbarment or suspension did not result in a *per se* denial of counsel, the *Chin Min Foo* court reasoned that

> [t]he presumption of regularity and the assurance that licensure normally carries is simply inapplicable where, as here, the license was obtained by fraud in such manner that the licensee's ability and training to practice law were never examined.

*Id.* at 594, 545 N.Y.S.2d at 58.

We agree with Justice Rothwax's analysis, which is consistent with that in *Solina*. The defect in Steinberg's licensure was not simply technical but was instead serious and substantive. At the time of his admission to the bar, Steinberg had not met the State's normal substantive requirements for admission to the New York State Bar. His competence to practice law had never been tested, and he was not entitled to bypass such testing. Had the truth been known as to his early law-school career and the reason for its interruption, he plainly would have been denied admission to the bar unless he took the bar examination; had he taken the bar examination, there is no assurance that he would have passed. Thus here, as in *Solina*, there has been no foundation for an assumption that defense counsel had the legal skills necessary to permit him to become a "duly admitted" member of the bar. We see no significant distinction between a "lack of ... authorization stemm[ing] from failure to seek it or from its denial for a reason going to legal ability, such as failure to pass a bar examination, or want of moral character," *Solina*, 709 F.2d at 167, and an invalidly gained authorization stemming from a fraud that both prevented the state from assessing

legal ability and revealed a want of moral character.

Further, the events surrounding the disbarment of Steinberg illustrate the danger cited by *Solina* as inherent in representation by one who is not duly licensed to practice. The eventual investigation into Steinberg's licensure was a response to his outrageous conduct. In this instance, that conduct was directed toward his family; but such an investigation could as easily have been triggered by a vigorous legal defense that irritated the prosecutor. The government states that it had routinely inquired before Novak's trial as to whether Steinberg had been admitted to practice. But the fact that a superficial routine check may be unrevealing is irrelevant. There remained the underlying risk that a vigorous defense could have led to a deeper probe and a discovery that Steinberg had not been "duly" admitted.

We conclude that Steinberg's representation of Novak did not satisfy the Sixth Amendment's guarantee of assistance of counsel.

## C. *The Role of Blais*

Our conclusion with regard to Steinberg does not end the inquiry, however, for the government argues, and the district court ruled, that Novak was provided with the constitutionally required assistance of counsel because he was also represented during the prosecution by local counsel, Blais. If Blais provided Novak with effective assistance at all critical stages of the proceedings, Novak's Sixth Amendment right would have been protected. The record, however, precludes such a conclusion.

It appears that, to a degree, Blais did actively represent Novak at some stages of the criminal prosecution. In denying the present petition, the district court indicated that in the criminal proceedings, the court had directed the government to serve copies of all motions and responses on local counsel throughout the proceedings. It also indicated that Blais had appeared in court, along with Steinberg, at several

hearings on motions and during jury selection.

Nonetheless, Novak argues that he was not assisted by Blais at trial, and the papers before us support his contention. The district court, in denying the present petition, stated that after the jury was empaneled Blais "was excused from daily attendance during the trial unless otherwise directed." August 1989 Opinion at 3. In denying Novak's first § 2255 petition, the court had noted that after being excused, Blais "did not actively participate in the trial." July 1983 Opinion at 2. And the government, in its brief on appeal, concedes that "Blais was absent during most of the trial."

Though conceding that Blais did not assist Novak at that critical stage, the government argues that Novak should be deemed to have had adequate representation because he consented to Blais's absence and was aware he could have called on or consulted with Blais. We disagree. If the defendant is unaware that the attorney representing him at trial has reason to fear that vigorous advocacy could expose the attorney to investigation and consequent sanctions in connection with bar admission, the defendant simply is not alerted to the need to call on his backup attorney. Novak's petition asserted that he did not know Steinberg had not been duly admitted to the bar, and the government has not suggested that there is any basis for believing that this was not so.

In sum, in view of the district court's findings and the government's concession with respect to Blais's absence during most of the trial, it cannot be concluded that Blais provided Novak with the mandated assistance during that obviously critical stage. Accordingly, Novak's petition for vacation of his conviction should have been granted.

## CONCLUSION

For the foregoing reasons, we reverse the judgment denying Novak's petition for vacation of the judgment of conviction, and we remand for entry of an order dismissing the prosecution against Novak unless the government elects to retry him.