**Oreste ABBAMONTE, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. 97 Civ. 2922 (RLC).

United States District Court, S.D. New York.

Nov. 3, 1999.

Hoffman Pollok & Pickholz, LLP, New York City (John L. Pollok, Michael S. Pollok, of counsel), for Plaintiff.

Mary Jo White, United States Attorney for Southern District of New York, New York City, (Steven P. Heineman, of counsel), for U.S.

## OPINION

ROBERT L. CARTER, District Judge.

### I. Background

Oreste Abbamonte was charged with thirteen others in a twenty-three count indictment with conspiracy to distribute and possession with intent to distribute heroin in violation of 21 U.S.C. § 846. In Count III, Abbamonte was charged with operating a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848. Abbamonte went to trial on November 12, 1986, with seven co-defendants and, after a four week trial, Abbamonte was convicted on Counts I (conspiracy), III ("CCE"), VII and VIII (substantive drug distribution offenses). Four counts were dismissed for lack of venue. Two co-defendants were convicted on the conspiracy and substantive drug distribution counts; one co-defendant plead guilty to the conspiracy count. The remaining co-defendants were acquitted of all charges.

On January 15, 1987, the court sentenced the petitioner to life imprisonment on the CCE count and to concurrent forty year prison terms on the remaining counts. On January 16, 1987, the court entered an order correcting the sentence to reflect its intention to have the sentence on the conspiracy count (Count I) run consecutive to the twenty-five year sentence the petitioner was already serving for prior federal narcotics offenses. On direct appeal petitioner's conviction and sentence were affirmed. *See United States v. Amen*, 831 F.2d 373 (2d Cir.1987), *cert. denied,* 485 U.S. 1021, 108 S.Ct. 1573, 99 L.Ed.2d 889 (1988).

On April 23, 1997, Abbamonte filed a Section 2255 petition seeking to vacate his

CCE conviction and sentence on the grounds that he received ineffective assistance of counsel. The petition was supported by an affidavit from Jonathan Boxer, his trial attorney, alleging that various personal problems set forth in the affidavit had prevented Boxer from defending Abbamonte adequately at his trial in 1986. The government opposed the petition, arguing that it was procedurally barred, because it had not been raised on Abbamonte's direct appeal. Furthermore, the government argued petitioner's claim was unavailing because there was no cause and prejudice demonstrated within the meaning of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). On January 12, 1998, the court denied the petition as being procedurally barred and on the merits, since no per se Sixth Amendment violation had been shown and the *Strickland v. Washington* requisites had not been met. *See Strickland,* 466 U.S. at 667–68, 104 S.Ct. 2052.

In an opinion issued on November 23, 1998, the Court of Appeals reversed the denial of the Abbamonte Section 2255 petition on the ground that the instant claim of ineffective assistance of counsel was substantially different from that alleged on direct appeal, and accordingly should not have been denied on procedural grounds. The Court of Appeals ruled that a hearing on the claim of ineffective assistance of counsel was required and ordered the case remanded to this court for the required hearing to be held.

On April 22, 1999, the hearing took place. Boxer was the only witness to appear. The court was advised that the claim of ineffective assistance of counsel was "essentially a *Strickland [v. Washington]* claim." (Tr. at 27).[1]

Boxer testified that he was retained to represent Abbamonte who had been indicted in the summer of 1986. (Tr. at 5). The trial began in November, 1986. (Tr. at 6). Boxer testified that he believed that the only avenue for success was to concentrate on the CCE count and convince the jury

that the defendant did not supervise five people. Boxer explained, "I believed ... the tapes ... were basically incontrovertible, that the only way to succeed was on the issue of the [21 U.S.C. § ] 848 [count], continuing criminal enterprise, and there was no sense in trying to tell the jury that there ... were no drug transactions, there was no conspiracy. In my opinion, they wouldn't have believed it and we wouldn't have had any credibility on what I considered the more important part of the case." (Tr. at 24–25).

In his affidavit supporting petitioner's claim of ineffective assistance of counsel, Boxer alleged in paragraph two that several months before the commencement of his representation of the petitioner he had been warned that disbarment proceedings would be instituted against him and that he would be suspended for two years. The proceeding was instituted because of his gross neglect in the handling of a minor's estate. In his affidavit Boxer states, "Ultimately, I was subpoenaed to appear before the Disciplinary Committee, and confronted with the State's intention to take away my license to practice law.... Despite being aware of this pending investigation ..., I nonetheless took over Mr. Abbamonte's case. I never informed Mr. Abbamonte, the court, or the government of my expected suspension." (Aff. Boxer, Def. Ex. B 1–2).

The Abbamonte trial began in November, 1986. The problems concerning Boxer's mishandling of the estate began in 1979. In regards to the estate matter, Boxer testified that "[w]ithin a few months, I knew it was going to be a problem. It was way over my head." (Tr. at 46). Boxer received a request to respond to the Grievance Committee in September, 1985, (Tr. at 48); he was deposed by the Disciplinary Committee in January, 1986, (Tr. at 47–48); the report of the special referee recommending his disbarment was issued in March, 1989, (Tr. at 48); and the Appellate Division (Second Department)

---

1. Tr. refers to the transcript of the April 22, 1998 hearing.

confirmed the report and ordered Boxer's disbarment in February, 1991. (Tr. at 49) & (Def. Ex C.). However, Boxer's testimony at the hearing indicated that, contrary to his affidavit, the bar investigation had not adversely affected his representation of petitioner in the 1986 trial.

In paragraph three of his affidavit Boxer attested that at the same time he was worrying about the disbarment proceedings and undertaking the defendant's representation, his personal life was "chaotic." (Boxer Aff. Def. Ex. B at 2). "[D]uring the pendency of Mr. Abbamonte's case, [I ] was being ordered to appear in family court on a regular basis to attend to child support, custody and visitation issues." (*Id.*) Boxer also attested to the fact that he was under great financial pressure because he was supporting an expensive life style, had child support obligations and two residences in New York. (*Id.*)

At the hearing, Boxer testified that he had not been ordered to appear in family court at any time during the Abbamonte trial. He explained that the dispute with his first wife involved family court appearances, and that dispute arose when he married his third wife—whom he left in April, 1986. Boxer conceded at the hearing that the spousal dispute necessitating the family court appearances took place before the Abbamonte trial. (Tr. at 49–50).

The allegation in Boxer's affidavit concerning the support of two residences was also modified at the hearing. Boxer had been paying the rent for his third wife's Manhattan apartment, but he stopped paying the rent when he left her in April, 1986. At the time of the trial, he was paying only for his residence in Queens where he lived with his girlfriend. (Tr. at 50–51).

In paragraph four of his affidavit, Boxer stated that the girlfriend he lived with during the defendant's trial was an alcoholic and drug user and that she drew him into an erratic and irresponsible lifestyle. He stated that he would stay up late into the night with her and come to court hav-

ing had little sleep and unprepared for the next day's court session. (Boxer Aff. Def. Ex. B at 2).

At the hearing, Boxer indicated that his girlfriend ingested cocaine once or twice a week and sometimes a week or two would pass without her using cocaine; that he did not think she was an addict; and that she did not abuse alcohol during the period prior to petitioner's trial or during the trial itself. (Tr. at 52). He also stated that he did not regularly ingest cocaine during the trial or during the period he was engaged in pre-trial preparation. (*Id.*) Boxer explained that he stayed up late with his girlfriend once or twice a week, took the train from Long Island to Manhattan in the morning, and was never late for court. (Tr. at 53–54). Boxer, his girlfriend and her two children lived together in the same house during the period he functioned as defendant's trial counsel. (Tr. at 54).

Boxer stated in the affidavit that he could not do any trial preparation at home and could not work in his office because "[d]isagreements with my partners throughout the time of the trial caused tensions which made it impossible to work there." (Boxer Aff. Def. Ex. B at 2). Again, Boxer's testimony at trial illuminated and modified the statement in the affidavit. Boxer testified that his office disagreement was with one of the partners about a personnel decision the partner made. Because of this, Boxer chose not to work at the office; he was not prevented from doing so by the firm. (Tr. at 55–6).

In the affidavit Boxer stated that he was distracted during petitioner's trial because his practice was falling apart; that his clients were angry because he was unable to properly attend to their cases; and that he was aware of being surveilled by law enforcement officers, but that he "was not sure which of [his] various problems, distractions or former clients may have prompted the surveillance." (Boxer Aff. Def. Ex. B at 2). When asked about these statements at the hearing, Boxer testified that the clients referred to in the affidavit

never sued him, no disciplinary proceedings ever resulted from these client relationships, (Tr. at 57–58), and the surveillance occurred on only one day which was about six months before the Abbamonte trial. (Tr. at 59). He also testified that he did not believe that he had been followed because he had done anything improper or illegal. (Tr. at 60–61).

In the affidavit Boxer stated that he served as a government witness during his representation of Abbamonte. Boxer was retained in 1979 by Fred Todaro's widow to file a civil suit against Douglas Rega, Todaro's former partner. Government agents involved in investigating Rega for RICO violations secured from Boxer all the information he possessed concerning the civil lawsuit. In 1989, Boxer testified in Rega's RICO trial in which Rega was charged with Todaro's murder. In the affidavit Boxer stated, "Notably, I was lending my cooperation to the government in this matter and was aware I would testify at the Rega trial at the time I was defending Mr. Abbamonte's case." (Boxer Aff. Def. Ex. B. at 3). At the hearing, Boxer testified that he was not contacted by the government about testifying in the Rega trial until sometime in 1988, and that he testified in 1989 as an expert witness. (Tr. at 61). Boxer had no personal stake in the outcome of the criminal trial, and the work he did in the case did not influence anything he did in the Abbamonte case. (Tr. at 62).

At the hearing, on direct examination Boxer stated that he recalled Agent Franciosa referring to Joseph Delvecchio as Abbamonte's partner; that he did not question the agent about this testimony; and that he spent only a total of three minutes in his cross-examination of this witness. (Tr. at 26–27). On cross-examination, Boxer testified that he did cross-examine Franciosa on certain matters; that he succeeded in getting Franciosa to admit that there were no tape recordings of the agent's conversations with Abbamonte and that, there were no surveillance tapes or phone calls recorded (despite the use of pen registers) connecting Abba-

monte with Lorenzo DiChiara, a convicted felony offender cooperating with the government. (Tr. at 62–63).

Boxer testified that there were misspellings and grammatical errors in the requests to charge Boxer submitted to the court, (Tr. at 29–30), and that after his summation he had several conversations with Abbamonte, and he stopped being-paid. (Tr. at 32–33). Thereafter, Boxer appeared at Abbamonte's sentencing and said he could not speak because he had not had the opportunity to adequately prepare, (Tr. at 33), when in fact he did not speak because he had not been paid. (Tr. at 33–34). Before the sentencing he had advised Abbamonte that he was not going to speak at the sentencing. (Tr. at 66).

## II. DETERMINATION

■ Ineffective assistance of counsel claims fall into three categories. The first category involves infractions so severe as to constitute a per se violation of the Sixth Amendment. *See Bellamy v. Cogdell*, 974 F.2d 302, 306 (2d.Cir.1992) (en banc). Thus far, per se violations have been found only when a defendant is represented by one not licensed to practice law, and when the defendant's attorney is implicated in defendant's crime. *See United States v. O'Neil*, 118 F.3d 65, 71 (2d Cir.1997). Where either of these circumstances is established, nothing further is needed to obtain relief. *See United States v. Novak*, 903 F.2d 883, 888 (2d Cir.1990).

■ The second category involves conflicts of interests between defendant and his attorney that are not sufficient to meet the per se yardstick, but may nonetheless jeopardize the adequacy of the attorney's representation. *See O'Neil*, 118 F.3d at 71 (citations omitted). To prevail in this category there must be a showing of an actual conflict of interest that led to "a lapse of representation." *United States v. Stantini*, 85 F.3d 9, 16 (2d Cir.), *cert. denied*, 519 U.S. 1000, 117 S.Ct. 498, 136 L.Ed.2d 390 (1996). If there is a showing of an actual conflict of interest and the

defendant demonstrates that the conflict adversely affected the quality of the representation his counsel provided, prejudice is presumed. *See Strickland,* 466 U.S. at 692, 104 S.Ct. 2052. To meet this yardstick, the claimant must establish that some reasonable alternative defense strategy or procedure might have been adopted but was not because the alternative was adverse to counsel's other interests, or was not pursued because of those interests. *See Stantini,* 85 F.3d at 16.

The third category is unrelated to conflicts of interest, and these claims are measured by the *Strickland v. Washington* yardsticks. Defendant must show "(1) that his attorney's performance fell below an 'objective standard of reasonableness,' and (2) 'that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Kieser v. New York,* 56 F.3d 16, 18 (2d Cir.1995) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052).

In his pre-hearing memorandum, Abbamonte contends that his counsel's performance fell below "an objective standard of reasonableness" and his unprofessional errors and omissions caused the adverse result with respect to the CCE count. (Pet. Pre–Hr'g. Mem. at 5); this claim is in apparent reliance on *Strickland v. Washington. See* 466 U.S. at 694, 104 S.Ct. 2052. In addition, Abbamonte contends that he has satisfied the second category of ineffective assistance of counsel claims, since Boxer's "preoccupation with his own problems created an actual conflict between the petitioner and Boxer." (Pet. Pre–Hr'g. Mem. at 6) (citing *Cuyler v. Sullivan,* 446 U.S. 335, 356 n. 3, 100 S.Ct. 1708, 64 L.Ed.2d 333) ("[t]here is an actual, relevant conflict of interests if, during the course of the representation, the defendants' interests do diverge with respect to a material factual or legal issue or to a course of action.").

When counsel was asked at the hearing what category was being claimed, he replied that it was "essentially a *Strickland* claim," (Tr. at 27), which the court understood to mean that petitioner's proof at the hearing would establish that Boxer's representation fell below an objective standard of reasonableness to petitioner's detriment. Petitioner's post hearing memo reasserts a claim of ineffective assistance that meets the actual conflict yardstick, (Pet. Post Hr'g. Mem. at 10–13), and for the first time seeks to invoke reliance on a per se violation. (*Id.* at 13–14). Abbamonte also contends, in reliance on *Strickland,* that his counsel's performance at his trial fell below an objective standard of reasonableness and that, but for counsel's deficient performance the outcome might have been different. Specifically, plaintiff alleges counsel should have examined two key witnesses whose testimony would have assisted in establishing that the government's proof on the CCE charge was insufficient to sustain the jury's guilty verdict; failed to listen to the tapes and specify which of these best demonstrated that Abbamonte was suffering from cocaine psychosis; and failed to effectively cross-examine other key witnesses.

Petitioner further seems to argue that these deficiencies and Boxer's lifestyle created a potential conflict of interest between the two of them, and that "an actual conflict existed" between petitioner and counsel because their interests diverged when Boxer did not speak at the sentencing hearing on behalf of Abbamonte because he had not been paid. Abbamonte contends that this amounted to a per se violation of his Sixth Amendment rights. (Pet. Post Hr'g. Mem. at 7–15).

In short, Abbamonte asserts that his Sixth Amendment claim falls under all three recognized categories of ineffective assistance of counsel. The court examines petitioner's contentions as to each category.

 It is clear that Abbamonte's claim does not satisfy the first category of per se Sixth Amendment deprivations. Boxer was licensed to practice law during the period of his representation of petitioner

and was not implicated in the crimes for which petitioner and his co-conspirators were being tried. Such circumstances are thus far the only instances in which per se violations have been found. *See O'Neil*, 118 F.3d at 70–71.

■ The court also rejects Abbamonte's contention that Boxer's failure to speak on his behalf at his sentencing constituted an actual conflict of interest, bringing it within the parameters of the second category. Obviously, the sentencing hearing is a critical stage of any criminal proceeding, and failure of a defendant to pay his counsel does not justify counsel in refusing to fulfill his obligation of zealous advocacy at that stage of the proceedings. *See id.* at 72 ("lawyers are required to provide zealous advocacy regardless of a criminal defendant's failure to pay legal fees") (quoting *United States v. Wright*, 845 F.Supp. 1041, 1073 n. 35 (D.N.J.), *aff'd*, 46 F.3d 1120 (3d Cir.1994)). Indeed, Boxer's refusal or failure to speak on behalf of petitioner at the sentencing hearing on January 15, 1987, might qualify as an actual conflict with prejudice presumed but for the fact that petitioner was advised by counsel in advance of the sentencing date that he was not going to speak at the sentencing hearing. (Tr. 66).

At the sentencing hearing, the court said that it would hear first from counsel for the parties, then from the government, and then from defendants before imposing sentence. (*See* January 15, 1987, Sent. Tr. at 17. *sub. nom. United States v. Vasta*, 86 Cr. 060) Boxer declined to speak. (Sent. Tr. at 18). ("[B]ased upon the fact that I really haven't had an opportunity to do what I believe is an adequate preparation for a statement made before this Court, under these circumstances, ... I think your Honor can go ahead after [the government] speaks and sentence the defendant.") (*Id.*) Subsequently, Abbamonte was asked if he wished to say anything. He replied that he did not. (Sent. Tr. at 39).

Abbamonte could have advised the court of the situation, and the court had available several alternatives which could have protected petitioner. It could have ordered Boxer to fulfill his professional responsibility. It could have postponed the sentencing date to permit Abbamonte to secure new private counsel or court-appointed counsel to represent him at a continued sentencing hearing.

■ Abbamonte apparently did not at the time consider the matter of sufficient importance to him to advise the court of the problem. In any event, in the circumstances presented here, *O'Neil* instructs that where an attorney fails to fulfill his "ethical obligation to dutifully represent his client as a result of a fee dispute ... *Strickland* provides the appropriate analytical framework." *Id.* (citations omitted). This seems particularly appropriate here where the matter could have been brought directly to the court's attention by petitioner at the time but was not, and now some twelve years later is raised in a collateral proceeding.

Nothing else incident to Boxer's representation even remotely approaches an actual or potential conflict of interest category. Boxer was present at every trial session and pursued a thought through trial strategy. At no time was there any observable indication of inattention or lack of alertness or coherence discernable to the court. Although the trial took place some twelve years, ago, if counsel had shown any evidence of being under some physical or mental dysfunction which was interfering with his performance, the court would have remarked about it in open court or in the robing room; in either case, the observation would have been recorded.

Therefore, petitioner's claim must be measured by *the Strickland v. Washington* standard pursuant to which petitioner must (1) show that Boxer's performance fell "below an objective standard of reasonableness" under "prevailing professional norms" and (2) "affirmatively prove prejudice" from the claimed flaws in the attorney's representation. *Strickland*, 466

U.S.at 687–88, 693–94, 104 S.Ct. 2052; *see also United States v. Kirsh,* 54 F.3d 1062, 1071 (2d Cir.), *cert. denied,* 516 U.S. 927, 116 S.Ct. 330, 133 L.Ed.2d 230 (1995).

The evidence at trial was overwhelming and satisfied the government's burden to prove beyond a reasonable doubt that the petitioner operated a CCE for the sale and distribution of heroin during the period charged in his indictment. The details are set out in *United States v. Amen,* 831 F.2d 373, 376–78 (2d Cir.1987), on petitioner's direct appeal. Even more extensive details may be found in the Statement of Facts in the Government's Brief on direct appeal; *see also,* (*Gov. Pre–Hr'g. Mem. in Opp.* at 6–10). Thus they need not be regurgitated here.

Moreover, during the course of the trial the petitioner was a virtual cauldron of simmering rage; he showed contempt for the court process in which he was involved, and seemed continually on the verge of bursting into violence. The jury watched this performance every day of the trial. Collectively, petitioner's body language, and the many tapes and live testimony documenting the numerous drug transactions involved in the case eliminated any prospect that the jury would have had reasonable doubt about petitioner's guilt. *See Strickland,* 466 U.S. at 695, 104 S.Ct. 2052. ("When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.").

"Judicial scrutiny of counsel's performance must be highly deferential. . . ." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Because of the difficulties inherent in making the evaluation, the court's focus must be on the "fundamental fairness of the proceeding whose result is being challenged" and " 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *United States v. Aguirre,* 912 F.2d 555, 560 (2d Cir.1990) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). The cases relied on by petitioner either were decided before *O'Neil* or are otherwise inapposite. In any event, there was and is no divergence of interests between petitioner and Boxer.

■ Boxer attempts to support Abbamonte's claim that his representation was deficient by filing an affidavit denigrating his own professional skills, exaggerating the actual facts and misinforming the court about his personal problems. On cross-examination Boxer had to retract many of the assertions in the affidavit. He was not distracted by marital or child support disputes during petitioner's 1986 trial. He was not up all night partying and ingesting cocaine with his live-in girlfriend. His girlfriend was not a drug addict; they partied on occasion, but he appeared in court every day and on time during the three week trial. His decision to concentrate on defending petitioner against the CCE count, which carried a sentence of life imprisonment, was professionally appropriate.

■ Petitioner has failed to meet the first of the *Strickland* criteria since he has not shown that Boxer's representation fell below an objective standard of reasonableness. Nor has he met the second. While petitioner cites alleged flaws in his attorneys' performance, at no point does petitioner show that but for the alleged flaws in Boxer's performance, the outcome would have been different. Mere conclusory assertions are not enough. Petitioner must affirmatively demonstrate alternatives to Boxer's representation that would have changed the result in his case.

In sum, Abbamonte has not provided the court with sufficient facts to show that Boxer's representation of him supports a per se ineffective assistance of counsel claim or an actual or potential conflict of interest claim. Nor has he met the evidentiary requisites necessary to support a claim of ineffective assistance of counsel under *Strickland*'s yardsticks. Therefore, Abbamonte's Section 2255 petition to va-

cate his CCE conviction and sentence, and his request for a new trial are denied.

**IT IS SO ORDERED.**