**STATE of Minnesota, Respondent,**

v.

**Kevin EDWARDS, Appellant.**

**No. A06–820.**

Court of Appeals of Minnesota.

July 31, 2007.

Lori Swanson, Attorney General, Kelly O'Neill Moller, Assistant Attorney General, St. Paul, MN; and Kathleen Heaney, Sherburne County Attorney, Elk River, MN, for respondent.

John M. Stuart, State Public Defender, Jodie L. Carlson, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by
SHUMAKER, Presiding Judge;
PETERSON, Judge; and ROSS, Judge.

## OPINION

SHUMAKER, Judge.

Appellant Kevin Edwards challenges his conviction of first-degree criminal sexual conduct, arguing that he was denied a fair trial because the attorney who represented him was suffering from mental illness during the trial. Appellant argues that an attorney's mental illness during the representation is presumptively prejudicial and should qualify as structural error. Appellant also argues that his attorney exhibited aberrant behavior: being belligerent, offering broad and inappropriate generalizations, and losing concentration during closing argument, all of which prejudiced appellant's case. We reject the application of structural error to appellant's attorney's alleged mental illness and conclude that such illness does not create a presumption of prejudice. Further, because counsel's conduct during trial cannot be shown to have affected the outcome of the case, his performance was not constitutionally deficient, and we affirm.

## FACTS

The state charged appellant Kevin Edwards with one count each of first-degree, second-degree, and third-degree criminal sexual conduct arising out of his conduct in sexually assaulting C.F., a 20–year–old student at St. Cloud State University, in June 2005. C.F. testified that she went out for the evening to two parties with a friend. She testified that when she left the second party at about 1 a.m., she had an argument with her friend, began walking home, and became lost. She testified that she met two men who told her that her apartment was by Cub Foods. They walked her to Cub Foods, where one of the men stopped to talk with a man sitting in a van in the parking lot.

After C.F. entered and then left the store with one of the men, she began walking around the outside of the building to go home. The man in the van, who was later identified as Edwards, pulled up to her and said he heard she needed a ride; she got into the van.

Edwards drove past C.F.'s apartment and stopped the van near the entrance to the quarry, a wooded area. C.F. testified that Edwards walked into the woods calling someone's name and told her to wait. She testified that Edwards came back, pushed her shoulders on the ground, and got on top of her, saying he "just wanted to look" at her. She testified that she was "scared" and was "trying to find a way out," and that after a struggle Edwards was able to remove her pants and underwear. She testified that he stimulated his penis and was able to place it partially into her vagina. She removed his penis, but he placed it partially into her vagina a second time. He told her that he would kill her if he did not ejaculate; she testified that she was terrified and that she believed him. She estimated that he threatened five or six times to kill her. She lied and told him she was a virgin. She testified that after she pulled his penis out a second time, he said, "I'm sorry, I didn't know" and ran away.

C.F. put on her pants and was able to find her underwear, but dropped it on her

way out of the woods. Her purse strap was broken during the assault. She left a shoe behind so that she could remember the location of the assault. C.F.'s post-assault medical examination showed injuries to her elbows and above her buttocks, but no tissue injury to her vagina.

Although C.F. was unable to get the van's license-plate number, police identified Edwards as the van's driver. In a police interview, Edwards at first denied a sexual encounter with C.F., but agreed to submit a DNA sample. The partial DNA profile obtained from the sperm-cell fraction of C.F.'s perineal swab matched Edwards's DNA profile. The BCA scientist was unable to get a full DNA profile because there were so few sperm cells present. The statistical probability of finding that profile in unrelated individuals in the general population is one in 569. C.F. identified Edwards from a photo array as the person who committed the assault.

Edwards testified at trial that he had a sexual encounter with C.F., but asserted that it was consensual. He testified that he initially denied the encounter to police because he did not want to tell his pregnant girlfriend that he had cheated on her and because he did not ejaculate and did not think there would be any semen present. The jury convicted Edwards on all three counts.

Six weeks after trial, the Minnesota Supreme Court issued an order transferring Edwards's privately retained trial counsel, Nicholas Gegen, to disability inactive status, based on a stipulation entered with the Director of the Office of Lawyers Professional Responsibility. *See In re Gegen,* 706 N.W.2d 763, 763 (Minn.2005). The order stated that Gegen's reinstatement was subject to conditions relating to testing for alcohol abuse and expert evidence regarding his psychological fitness to resume practicing law. *Id.* at 763–64.

At a posttrial hearing, the disability-status order was discussed, and the district court granted Edwards's application for a public defender to represent him at sentencing. Defense counsel then moved for a new trial on the ground that Edwards's right to a fair trial was impaired because Gegen had been suffering from a mental illness, specifically bipolar disorder, at the time of trial. The defense argued that Gegen's mental illness amounted to structural error, which gave rise to a presumption of unfairness. The district court denied the new-trial motion, implicitly rejecting the argument that structural error applied. The district court determined that under the standard in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), counsel's representation did not fall below an objective standard of reasonableness, and there was no showing that, but for counsel's errors, the result of the proceeding would have been different. The court sentenced Edwards to 144 months, the mandatory-minimum sentence for first-degree criminal sexual conduct. This appeal followed.

### ISSUES

I. Does the alleged mental illness of Edwards's attorney as manifested during trial qualify as structural error, entitling him to a new trial?

II. Did the district court err by denying Edwards's motion for a new trial on the ground that counsel's behavior could not be shown to have affected the outcome of the case?

### ANALYSIS

#### I.

Generally, a party alleging ineffective assistance of counsel must affirmatively show that his "counsel's representa-

tion 'fell below an objective standard of reasonableness' and 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Gates v. State,* 398 N.W.2d 558, 561 (Minn.1987) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984)). This court need .not address both the performance and prejudice prongs if one is determinative. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069; *Hale v. State,* 566 N.W.2d 923, 927 (Minn.1997). This court reviews claims of ineffective assistance de novo. *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070; *see also Barger v. United States,* 204 F.3d 1180, 1181 (8th Cir.2000).

Edwards argues that he should not be held to the *Strickland* prejudice requirement because Gegen's alleged mental illness, as manifested at trial, constitutes a structural error, which requires a per se presumption of prejudice. *See Arizona v. Fulminante,* 499 U.S. 279, 308, 309–10, 111 S.Ct. 1246, 1264, 1265, 113 L.Ed.2d 302 (1991) (stating that while some types of trial errors are susceptible to "quantitative [ ] assess[ment] in the context of other evidence presented in order to determine whether ... [the errors were] harmless beyond a reasonable doubt," other kinds of errors are not subject to harmless-error analysis, but constitute "structural defects in the constitution of the trial mechanism" and "so affect[ ] the framework [of] ... trial" that they require automatic reversal); *see also Brecht v. Abrahamson,* 507 U.S. 619, 629–30, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353 (1993) (stating that structural errors "require[ ] automatic reversal because they infect the entire trial process").

■ In a decision released the same day as *Strickland,* the United States Supreme Court specified three circumstances in which a defendant's conviction would be reversed without inquiring into counsel's actual performance or requiring the defendant to show what effect counsel's representation had at trial. *United States v. Cronic,* 466 U.S. 648, 659–62, 104 S.Ct. 2039, 2047–48, 80 L.Ed.2d 657 (1984) (cited in *Bell v. Cone,* 535 U.S. 685, 695–96, 122 S.Ct. 1843, 1850–51, 152 L.Ed.2d 914 (2002)). These circumstances are: (1) "the complete denial of counsel" at a "critical stage" of the proceeding; (2) "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; or (3) when counsel is called on to render assistance under circumstances when competent counsel could very likely not do so. *Id.* In *Cone,* the Supreme Court held that when a defendant's claim involved a challenge to specific aspects of counsel's representation, rather than an assertion that counsel had entirely failed to test the prosecutor's case, error could not be presumed, and the *Strickland* standard applied. *Cone,* 535 U.S. at 697, 122 S.Ct. at 1851.

Generally, courts have applied a presumption of prejudice only when the defendant has established a constructive denial of counsel. *McGurk v. Stenberg,* 163 F.3d 470, 474 (8th Cir.1998); *see also Burdine v. Johnson,* 262 F.3d 336, 349 (5th Cir.2001) (applying presumption of prejudice to sleeping attorney); *United States v. Novak,* 903 F.2d 883, 890 (2nd Cir.1990) (applying presumption when counsel had a fraudulently obtained license). Further,

[a]s a practical matter, it is difficult to imagine situations that would trigger structural error analysis beyond the failure on the part of counsel to inform a defendant of certain basic rights, such as the right to trial by jury, to self-representation, or to an appeal as a matter of right.

*McGurk,* 163 F.3d at 475 n. 5.

The Eighth Circuit has declined to adopt a rule requiring a per se presumption of

prejudice regarding an attorney's mental illness. *Johnson v. Norris,* 207 F.3d 515, 518 (8th Cir.2000). The court in *Johnson* held that evidence of an attorney's bipolar disorder was "not the type of structural error envisioned in *McGurk,*" stating that "[b]ipolar disorder, like most mental illnesses, can have varying effects on an individual's ability to function, and the disease can vary widely in the degree of its severity. We are not convinced there is anything about [the attorney's] bipolar condition that would not lend itself to the normal fact-specific *Strickland* analysis." *Id.* Other circuits have come to a similar conclusion. *See, e.g., Dows v. Wood,* 211 F.3d 480, 485 (9th Cir.2000) (holding that state court correctly ruled that presumption of prejudice did not apply when defendant's counsel was diagnosed with Alzheimer's disease 18 months after trial); *Bellamy v. Cogdell,* 974 F.2d 302, 308 (2nd Cir.1992) (holding that defense counsel's admitted physical and mental incapacity before trial, resulting in suspension immediately after trial, did not constitute per se ineffective assistance); *cf. Pilchak v. Camper,* 935 F.2d 145, 148 (8th Cir.1991) (holding that use of unconstitutional jury-selection process by defense counsel who had Alzheimer's disease entitled defendant to new trial on ground of fundamental fairness).

Edwards acknowledges that the presumption of prejudice has been extended on a case-by-case basis only to situations in which "the defendant has established a constructive denial of counsel." He also acknowledges that the courts that have considered this issue "have rejected the application of structural error where counsel is mentally ill." But Edwards claims that he was constructively denied counsel because his mentally ill attorney was equivalent to a sleeping attorney.

Edwards provides numerous examples of counsel's somewhat bizarre statements and actions during trial. These include counsel: (1) "singing and dancing" in the parking lot, as witnessed by Edwards's girlfriend; (2) making slang references to premature ejaculation during trial; (3) asking C.F. whether it was appropriate for a person who is going to be an elementary teacher to "black out" from drinking; (4) referring to "black outs" with the nurse who examined C.F. at the hospital, even though the nurse said the term was inappropriate; (5) making generalizations that students from St. Cloud State, and C.F. in particular, were big partiers; (6) making stereotypical statements that Russians can hold their vodka and are good boxers, even though C.F.'s roommate was Bulgarian; and (7) making stereotypical statements about women during closing argument.

But contrary to Edwards's contention, his attorney was not equivalent to a sleeping attorney. Gegen told the jury his theory of the case and recited the burden of proof at opening statement and closing argument, objected at trial, and aggressively cross-examined the complainant. During closing argument, he challenged C.F.'s credibility, based on her drinking during the evening and the quarry's reputation as a party spot, and raised the inference that she may have "blacked out" during the assault. Although counsel's performance, as noted by Edwards, shows odd behavior at various times throughout the trial, it does not amount to a constructive denial of counsel.

Edwards notes counsel's additional conduct that he asserts was prejudicial to the defense. For instance, he points out that counsel elicited Edwards's testimony that Edwards did not review the police reports because he knew what he was going to say at trial and that counsel asked questions during cross-examination of the nurse who

examined C.F. that led the nurse to reiterate C.F.'s testimony. But this conduct is appropriately tested under the *Strickland* standard and does not trigger structural analysis. *See McGurk,* 163 F.3d at 475 n. 5. Edwards also asserts a due-process violation based on counsel's elicitation from a police officer that the police interview ended after Edwards stated that he wanted an attorney. *See Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976) (holding that a prosecutor's use of a post-arrest *Miranda* warning violated due process). But this line of questioning immediately ended, and the officer also testified that the interview ended when the issue of Edwards's DNA testing was brought up. *See State v. Dobbins,* 725 N.W.2d 492, 509–10, 513 (Minn.2006) (holding that unobjected-to prosecutorial misconduct of eliciting testimony on post-*Miranda* silence was not prejudicial and did not provide grounds for a new trial when line of questioning immediately ended). This conduct does not rise to the level of structural error.

■ Edwards argues additionally that because he did not know that his counsel was mentally ill at the time of trial, he was deprived of his Sixth Amendment right to choose retained counsel, which is subject to a structural-error analysis. *See United States v. Gonzalez–Lopez,* —— U.S. ——, ——, 126 S.Ct. 2557, 2561, 165 L.Ed.2d 409 (2006). But "[d]eprivation of the right [to select counsel of one's choice] is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received." *Id.* at 2563. Edwards does not deny that he was allowed to choose the attorney he wished to represent him. And to the extent that Edwards appears to argue that he was denied a right to a knowing and intelligent choice of counsel, we have found no authority requiring the state to ensure full disclosure of an attorney's possible disability within the context of a private attorney-client relationship.

Finally, Edwards argues that because criminal defendants must be mentally competent to stand trial, it stands to reason that a defendant may not be represented by a mentally ill attorney. We observe that the record does not establish that Gegen's disability was due to mental illness. Further, this argument improperly equates the standard for competency to stand trial with a diagnosis of mental illness.

The district court did not err by failing to consider defense counsel's mental illness as structural error that entitled Edwards to a new trial without the need for a *Strickland* analysis.

## II

■ Edwards does not argue that, if structural error does not apply, the district court erred by determining that the two prongs of the *Strickland* test were not met. Ordinarily, issues not briefed are waived. *State v. Butcher,* 563 N.W.2d 776, 780 (Minn.App.1997), *review denied* (Minn. Aug. 5, 1997). We will, however, address this issue in the interests of justice. *See* Minn. R.Crim. P. 28.02, subd. 11.

■ The district court at sentencing stated,

I don't believe that either of the prongs in the *Strickland* standard have been met here either. I think the evidence was substantial and significant that the State presented. I don't think there is any showing that the outcome would have been different, nor do I think there's enough evidence—and I presided over the trial—that Mr. Gegen's representation fell below an objective standard of reasonableness.

I think it is significant to note that a lot of the behavior that might be considered outside the main stream ... are some of the things that Mr. Gegen said during breaks and not during the trial; and his behavior during the trial, although possibly aggressive as [the prosecutor] has described it, was not that of a mentally ill person that I saw by my observations, so I'm going to deny the motion.

In *Johnson,* the court similarly analyzed the behavior of defense counsel, who was diagnosed with bipolar disorder five years after the defendant's trial, under the *Strickland* standard. The court declined to find ineffective assistance based on examples of defense counsel's "unprofessional and perhaps bizarre behavior," including lying about his experience in capital cases, submitting a false application for malpractice insurance, and lack of trial preparedness. *Johnson,* 207 F.3d at 518. The court held, "Whether a result of bipolar disorder, character flaws, or just plain bad lawyering, these examples do not rise to the level of constitutionally deficient performance, because they cannot be shown to have affected the outcome of the case." *Id.* Similarly, defense counsel's conduct, although unorthodox, cannot be shown to have affected the outcome of this case. The evidence against Edwards was significant, including the complainant's injuries to her elbows and buttocks, which contradicted Edwards's theory of consensual sex. Therefore, the district court did not err by determining that the second prong of the *Strickland* test was not met.

### DECISION

Edwards's claim of ineffective assistance based on his attorney's alleged mental illness is not subject to structural-error analysis. The district court did not err by determining that Edwards failed to prove that his counsel's conduct during trial affected the outcome of the case.

**Affirmed.**